## John J. Barclay. *v.* Simon Deckerhoof, Joseph T. Alsip and W. I. Eicholtz and John E. Eicholtz, Administrators of William G. Eicholtz, Deceased.

*Contract—Building contract—Arbitration by architect—Mechanic's lien.*

A building contract referring to the architect " all disputes, however arising, and all questions of doubt as to the tenor and intention of the drawings and specifications, or of the contract," and providing that the contractor shall deliver the building free from all claims, and shall furnish, provide and deliver at his own cost all necessary materials, is broad enough to give the architect jurisdiction over the question whether the contractor and his sureties are bound to refund to the owner the amount paid by him on a mechanic's lien filed for materials furnished the building.

*Arbitration—Building contract—Architect—Qualification as arbitrator.*

In an action on an award by an architect under a building contract, the architect will not be held to have been disqualified to act as arbitrator by reason of the fact that he had testified as a witness at a trial in common pleas in an action between the same parties concerning the same dispute under the contract.

*Building contract—Arbitration—Architect.*

Where a building contract provides that all disputes shall be referred to the architect for settlement, and the owner after the building is completed brings an action against the contractor and his sureties to recover the amount of a mechanic's lien that plaintiff had been compelled to pay, and defendants object to the jurisdiction of the court, and plaintiff thereupon suffers a nonsuit and submits the question in dispute to the architect, the defendants at the trial of an action upon the award of the architect,

cannot object that the jurisdiction of the architect was ousted by the prior proceedings in the court of common pleas.

In such a case the fact that the owner resisted as far as he could the subcontractor's proceedings on the mechanic's lien, and that he notified the sureties of the contractor to interpose and make defense, does not affect the agreement to refer matters in dispute to the architect.

Argued May 15, 1895. Appeal, No. 11, July T., 1895, by defendants, from judgment of C. P. Bedford Co., Sept. T., 1893, No. 280, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Assumpsit on award of arbitrator. Before GORDON, P. J., specially presiding.

At the trial it appeared that on June 19, 1888, John J. Barclay made an agreement with Simon Deckerhoof, by which Deckerhoof agreed to " well and substantially erect, build, set up and deliver to said Barclay free and discharged of all liens or charges whatever," one dwelling house in Bedford, Pa., at the contract price of $5,880. At the same time Deckerhoof gave Barclay a bond in the sum of $5,000 with Joseph T. Alsip and William G. Eicholtz as sureties with this condition, " that if the above bounden, Simon Deckerhoof, shall and will, well and substantially erect, build and deliver to the said John J. Barclay one house, messuage or tenement according to plan, draft or scheme of Peter Bernheisel, architect, the specifications accompanying and terms of articles of agreement being identified and made part of the agreement, then the bond to be void." The specifications of the contract provided that " all disputes, however arising, and all questions of doubt as to the tenor and intention of the drawings and specifications, or of the contract, shall be referred to the architect, whose decision shall be considered final, binding, and without power of reference on all parties concerned."

After the completion of the house, the Bedford Planing Mill Company, which had furnished the lumber for the building, entered a mechanic's lien for $1,681.28. A scire facias was issued on the lien, and the sureties on the contractor's bond were notified by Barclay to intervene and make defense. Barclay filed an affidavit of defense, and after argument, but without any defense made by the sureties, judgment was entered

in favor of the planing mill company. Subsequently Barclay paid the debt, interest and costs of this judgment. In 1890, Barclay brought an action against Deckerhoof and his sureties in the common pleas to recover the amount paid on the mechanic's lien, and also the sum paid to remedy alleged defects in the building. Judgment was entered in favor of Barclay against Deckerhoof, but against Barclay in favor of the sureties. On appeal to the Supreme Court the judgment in favor of the sureties was reversed: 151 Pa. 374. At the second trial of the case in the common pleas, defendants objected to the jurisdiction of the court, on the ground that the case should have been referred to the architect. Plaintiff thereupon took a nonsuit and submitted the question in dispute to the architect. The architect subsequently made an award in his favor for $1,819,21. At both trials in court Bernheisel, the architect, had been called as a witness by plaintiff, and testified as to the matters in dispute.

Defendants' points were among others as follows:

1. That under all the evidence in the case the verdict should be for the defendants. *Answer:* We refuse to so instruct you. [5] . . . .

3. That if Barclay took possession of the building in April, 1889, when it was substantially completed and did not call upon the defendants to submit to the decision of the arbiter such matters as he then considered were in dispute between him and the contractor, he could not thereafter require such submission, as the terms of the contract clearly show that the parties contemplated such submission to the architect during the time he had charge of the construction of the building or at the time possession was taken by the owner.

4. That Barclay having taken possession of the building the 13th of April, 1889, when according to his testimony and that of Bernheisel it was substantially completed, the architect had no power to sit as arbiter nearly four years afterwards, viz : on the 28th of February, 1893, unless it was done by the mutual consent and agreement of all the parties. *Answer:* We also refuse to affirm these points for the reasons stated in our general charge that, on account of defense made in the suit at law, defendants are estopped from raising this question. [6]

5. That plaintiff, Barclay, having elected to proceed in the court of common pleas of Bedford county to recover his al-

leged claim against the contractor and sureties in an action to No. 240 February term, 1890, and having recovered a judgment in said action against the principal on the bond, Simon Deckerhoof, for $1,294.52, which judgment remains unappealed from and unreversed, he was thereby precluded from going into another forum to recover from the same defendant the money he claims in that action and for which he recovered the said judgment. *Answer :* Gentlemen of the jury, that involves one of the questions which we have reserved for our future consideration, and we therefore decline to instruct you as asked. [7]

7. That the Bedford Planing Mill Company as a subcontractor were bound by the terms of the contract between Barclay and Deckerhoof, and when said company entered a lien against the said building and Barclay paid it without demanding that it be first submitted as a disputed matter to the architect for determination, it was a voluntary payment on his part, and he waived his right to have this matter submitted to the arbiter, and if the jury find that this item of $1,761.48 was included by the arbitrator in his award, they should find for the defendants. *Answer :* Gentlemen of the jury, that involves also part of the questions reserved for our future consideration. It may be as stated in this point that the planing mill company were bound by the terms of this agreement and could not legally enter this mechanic's lien against the building referred to, but this payment prior to the submission to the architect did not necessarily make it a voluntary payment. That is to say, if this plaintiff did pay this mechanic's lien, if he had no right to do it, and it turned out that it was a voluntary payment, he would not of course be entitled to credit for it; but as we look upon that question, it could as well be considered by the architect after payment by the plaintiff as before. The judgment was against the house and he was compelled by a threat of execution to pay it off, and the question whether or not it was a voluntary payment could be considered by the architect just the same as he could have passed upon the question whether it was a valid lien or not. [8] . . . .

9. That the clause in the contract providing for a submission of disputes to the arbiter related only to such questions as should arise between the owner and the contractor in relation to the erection and construction of the building according to

the plans and specifications, and that it did not embrace questions of law subsequently arising out of the act of Barclay who voluntarily paid the mechanic's lien, and if this question was submitted to the arbiter by Barclay, and the arbiter was induced by him to embrace it in his award, this was beyond the power of the arbiter and the award is not binding. *Answer:* We decline to so instruct you. [9]

10. That when Barclay brought suit in the common pleas court on this contract and, by force of a subpœna compelled Bernheisel to appear and testify in his behalf, and make estimates on damage and give evidence to support the theory of the plaintiff, that he had suffered loss, etc., he thereby disqualified him to act as an arbiter unbiased under the contract, if that right had existed in February, 1893, and waived his right to have Bernheisel thereafter sit as an arbiter. *Answer:* We decline to affirm that point; as we said before, there is not sufficient evidence in this cause to warrant an impeachment of the award for fraud or improper conduct. [10]

11. Under the terms of the contract the defendants were entitled to the judgment of the arbiter, uninfluenced by improper conduct or action on the part of the plaintiff, and if the jury find from the evidence that Barclay purposely used Bernheisel in court as a witness in the trials of said case, so as to commit him, by sworn testimony, to sustain the demand of plaintiff before calling on him to sit as arbiter, and that by being so used he was made partial and unfair, that this action of plaintiff disqualified Bernheisel to act, and his award would not be binding. *Answer:* Gentlemen of the jury, we say to you that the first part of this proposition is true. That is to say, it is a correct proposition of law that under the terms of the contract the defendants were entitled to the judgment of the arbitrator, uninfluenced. But we refuse to affirm the balance of it. As above stated, we say to you there is not sufficient evidence to warrant the submission of it to the jury. [11]

12. That under the circumstances of this case Deckerhoof and his sureties had a right to revoke the appointment as arbiter and the notices of February 27 and 28, 1893, served on him, before he sat as arbiter, did work such revocation. *Answer:* We refuse that point.] [12]

13. A waiver on the part of the plaintiff to have the archi-

tect sit as arbiter may be inferred from any of his acts that are inconsistent with his right to submit the questions to him for determination, and the jury are to determine from all the evidence in the case whether the plaintiff did waive his rights in this respect, and if they find that he did their verdict must be for the defendants. *Answer :* We say to you, gentlemen of the jury, that the matters referred to are evidence bearing on the questions, but we cannot affirm that they are sufficient, and in view of the fact that the reserved questions cover the balance of that point, we refuse to affirm it. [13]

14. The arbiter having admitted that he consulted counsel as to his duties as arbiter and as to the form of the award, and it being shown by his testimony and that of the plaintiff that the records of the proceedings and evidence in No. 240, February term, 1890,—which included his own testimony as a witness in said trial, and further that the judgment and records and papers in the case of the Bedford Planing Mill Company v. J. J. Barclay et al., were all submitted to him by Barclay, to be considered in making up his award, and that he did consider these matters and papers and judgment in coming to his decision as arbiter, that his award is not binding if he was led to make the mistake of receiving these papers for consideration and being influenced by them through the actions of plaintiff and his counsel. *Answer :* We also decline to affirm that point. There is no sufficient evidence in the case, as we said before, of improper conduct of the arbiter or effort of collusion between the plaintiff and his attorney and the arbiter to warrant us to affirm that proposition. [14]

Plaintiff's points were among others as follows :

5. That the defendants having interposed on the trial of the cause on two separate occasions, an objection to the jurisdiction of the court to hear and determine the matters in controversy, and the plaintiff having thereafter submitted the matters in controversy to the decision of the referee in accordance with the demands and objections of the defendants, they are now estopped to raise any objection to his right to act in accordance with the terms of the contract, constituting him a referee, or to the plaintiff proceeding by reference, award and action thereon. *Answer :* We affirm that point. [15]

6. That the referee was not disqualified to act as such in the

hearing of the disputes in question, nor in rendering the award on which this action is brought, from anything appearing in the evidence, and if he had been disqualified by reason of having given testimony in this action, prior to his sitting as referee, the defendants are estopped in setting up such objection now, in view of their demand at the trial in court, and after full knowledge of the alleged disqualification of the referee that the matters should be submitted to him before an action could be maintained.  *Answer :*  We affirm that point. [16]

The court reserved the following questions:

1. Is the plaintiff estopped or concluded from suing on the contract or proceeding before the arbitrator, under the arbitration clause in the contract, as was done in this case, by reason of having brought suit upon the contract and bond in this court, to No. 240, February term, 1890, and obtaining judgment therein against Simon Deckerhoof, one of the defendants, for $1,294.21, and after reversal in the Supreme Court, subsequently at the second trial of said cause on December, 1892, suffering a voluntary nonsuit?

2. Whether Peter Bernheisel, architect and arbitrator, had the right to take cognizance of and pass upon the question of defendants' liability for the payment of the judgment obtained by the Bedford Planing Mill Company v. John J. Barclay, owner, and Simon Deckerhoof, contractor, defendants, to No. 62 November term, 1889, obtained upon sci. fa. on mechanic's lien, under the arbitration clause in the building contract before stated. That is to say, whether he passed upon and included in his award matters which had no right to be referred to him as arbitrator, and which he had no right to pass upon."

Verdict for plaintiff for $2,013.86.

The court, GORDON, P. J., subsequently entered judgment on the points reserved in favor of the plaintiff for the amount of the verdict.

*Errors assigned,* among others, were (5–16) above instructions, quoting them; (17) in entering judgment for plaintiff in the verdict.

*John H. Jordan* and *Alexander King, Kerr & McNamara* with them, for appellants.—Believing he was safe from loss by rea-

son of the money still in his hands, without calling upon the architect to sit as arbiter, and settle these possible disputes, plaintiff accepted the building, went into and retained possession of the same. This was in terms a delivery and acceptance of the building under the contract: Pepper v. Phila., 114 Pa. 111; Quigley v. De Hasse, 82 Pa. 267.

A mechanic's lien could not be legally entered under the terms of this contract, by the contractor or a subcontractor.

One who voluntarily pays money with full knowledge or the means of knowledge of all the facts, without any fraud having been practiced upon him, cannot recover it back by reason of the payment having been made in ignorance of the law : Gould v. McFall, 118 Pa. 457.

This court has the power to reverse the sureties without affecting the judgment against the principal: Jamieson v. Pomeroy, 9 Pa. 230; McCanna v. Johnson, 19 Pa. 434; Swanzey v. Parker, 50 Pa. 441.

The clause in the contract for a submission of disputes to the arbiter related only to such questions as should arise between the owner and the contractor in relation to the erection and construction of the building according to the plans and specifications.

*John M. Reynolds*, for appellee.—Where the Supreme Court intends to reverse in part, it is so indicated in the order of reversal: Barnett v. Barnett, 16 S. & R. 55.

Where a judgment is entered jointly against two which is erroneous as to one, it cannot be reversed as to one and affirmed as to the other: Boaz v. Heister, 6 S. & R. 17; Miller v. Keene, 5 Watts, 350; St. John v. Holmes, 32 Am. Dec. 35; Donnelly v. Graham, 77 Pa. 274.

Before a court can exercise the power to hear and determine a cause it must appear that the law has given the tribunal capacity to entertain the complaints against the person or thing sought to be charged or affected: Black on Judgments, 253, 261.

When a party is bound upon due summons to come in, and has full oportunity to do so, then the judgment is a bar even when the persons having this opportunity are not parties ap-

pearing on the record: Wharton on Evidence, 763; Hostetter v. Pittsburg, 107 Pa. 435.

The referee had the right to take cognizance of the mechanic's lien of the mechanic's claim in settling this dispute between the parties.

If awards follow the submission they are binding without any express agreement that they shall be so: 6 Lawson's Rights and Remedies, 5303; Speer v. Bidwell, 44 Pa. 33; Hostetter v. Pittsburg, 107 Pa. 434; Boston Water Power Co. v. Gray, 6 Metcalf, 131.

PER CURIAM, October 7, 1895:

The agreement, referring to the architect " All disputes, however arising, and all questions of doubt as to the tenor and intention of the drawings and specifications, or of the contract," is certainly broad enough to embrace the question whether the contractor and his sureties were bound to refund to the plaintiff the amount paid by him on the mechanic's lien, especially in view of the clauses in the building contract by which the contractor agreed to deliver the building free from all claims, and to furnish, provide and deliver, at his own cost, all necessary materials. The construction given to the agreement by the referee appears to work substantial justice, but whether it does or not is immaterial, inasmuch as the parties agreed that his decision should be final.

The fact that the architect, prior to his acting as referee, was called as a witness on the trial in the common pleas, did not disqualify him to act as such referee. It is not alleged that as referee he acted otherwise than fairly and properly.

The interlocutory judgment against Deckerhoof ceased to be operative upon the reversal of that case by this court, and cannot have any effect here. By their points submitted on the trial of that case, the defendants challenged the jurisdiction of the common pleas, and plaintiff thereupon elected to suffer a nonsuit and paid the accrued costs. They cannot now object that the tribunal of their original agreement and subsequent election was resorted to. The jurisdiction of the referee does not appear to have been ousted by anything that occurred subsequently to his appointment.

While the subcontractor was doubtless bound to observe the

terms of his own contract with his principal, he was not bound by the agreement to refer, to which he was not a party. His scire facias on the mechanic's lien, which the plaintiff resisted as far as he could, and the defense which the latter notified the sureties to interpose, cannot therefore affect the agreement to refer.

There is no sufficient evidence that the plaintiff made a voluntary payment of the mechanic's lien or accepted the building and waived performance of the building contract. On the contrary, the evidence shows that unusual care was exercised to negative such conclusions. For these and other reasons, given by the learned trial judge, the defendants' point on that subject might well have been refused.

It is unnecessary to consider the specifications of error in detail. We find nothing in either of them that would justify a reversal of the judgment entered on the verdict in favor of the plaintiff; nor do we think that further discussion of any of the questions involved is necessary.

Judgment affirmed.