EYRE-SHOEMAKER, Inc., v. BUFFALO, R. & P. R. CO.

(Circuit Court of Appeals, Third Circuit. February 3, 1912.)

No. 1,558.

1. CONTRACTS (§ 285*)—STIPULATION FOR ARBITRATION—PREMATURE SUIT.

Where a contract between a construction company and a railroad provided that in order to prevent litigation or dispute, and to provide for the prompt settlement of all questions that might arise relating to the execution of the work provided for by the agreement, and to the measurement, classification, and estimates for the same, it was thereby mutually agreed that the decision, arbitrament, classification, and estimates of the railroad's chief engineer should be final and conclusive as to both parties, a suit brought by the construction company for breach

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the contract before an arbitrament of the chief engineer was premature.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1290, 1291, 1303, 1304; Dec. Dig. § 285.*]

2. CONTRACTS (§ 285*)—STIPULATION FOR ARBITRATION—PREMATURE SUIT—EFFECT.

Where a construction company and a railroad had agreed that disputes as to the work should be arbitrated by the railroad's chief engineer, a suit brought by the construction company for breach of the contract before he had an opportunity to act did not affect his power as arbitrator.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1290, 1291, 1303, 1304; Dec. Dig. § 285.*]

3. CONTRACTS (§ 285*)—STIPULATION FOR ARBITRATION—DISQUALIFICATION OF ARBITRATOR.

The fact that when such suit was brought the chief engineer signed and swore to the railroad's affidavit of defense did not disqualify him from thereafter acting as arbitrator.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 285.*]

4. CONTRACTS (§ 284*)—STIPULATION FOR ARBITRATION—CONSTRUCTION.

A contract providing that the decision, arbitrament, classification, and estimates of the chief engineer of one of the parties should be final and conclusive as to both parties did not mean the person who filled the position when the contract was entered into, but the person who was chief engineer when the decisions contemplated were made.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 284.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action at law by Eyre-Shoemaker, Incorporated, against the Buffalo, Rochester & Pittsburgh Railroad Company. From a judgment of compulsory nonsuit, plaintiff brings error. Affirmed.

Thomas S. Butler and Watson & Freeman, for plaintiff in error. Stone & Stone, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Eyre-Shoemaker, Incorporated, a corporation of Delaware, brought suit against the Buffalo, Rochester & Pittsburgh Railroad Company, a corporation of Pennsylvania, to recover upon a railroad construction contract. At the termination of the plaintiff's case, the court granted the defendant's motion for a compulsory nonsuit, and on its refusal to take the same off plaintiff sued out this writ.

The case turns on the construction of that clause of the contract which provides:

"In order to prevent litigation or dispute, and to provide for the prompt settlement of all questions that may arise relating to the execution of the work provided for by this agreement, and to the measurement, classification, and estimates for the same, it is hereby mutually agreed that the decision, arbitrament, classification, and estimates of the chief engineer of this company shall be final and conclusive to both parties."

All of the claims involved in this suit, including extra work, compensating extensions for delay, change in plans, etc., grew out of the

execution of the contract which provides for their ascertainment. While attempts were being made to settle these claims, the plaintiff, without obtaining any final certificate of the chief engineer, brought this suit. In that respect the contract provided for monthly payments on certificate by such engineer, less 10 per cent. reserved until completion of the contract—

"when the said percentage so retained, together with the balance due on the final estimates, shall be paid by the company, upon the certificates of the company's chief engineer that the whole work provided for in this contract is completed and acceptably finished within the time specified."

After suit brought the chief engineer, after notice to both parties, proceeded to arbitrate and adjudge all matters in dispute, including the claims in this suit, and awarded the plaintiff some $41,000, which sum the defendant company stood ready to pay, but plaintiff declined to receive. The case turns on the question whether liability by suit on the contract depended on the initial arbitrament of the chief engineer as provided for in the contract itself.

[1] The power of parties to a contract to create their own exclusive tribunal for the arbitration of their differences is unquestioned, and such arbitration contracts are upheld by the law of Pennsylvania. Conneaut Co. v. Pittsburgh Co., 225 Pa. 596, 74 Atl. 620. So, also, where parties contract that no payments shall be made until a designated agent ascertains and certifies that the work is done, such certificate, in the absence of fraud, gross mistake, or a failure to exercise honest judgment, is a condition precedent to enforcing payment by suit. Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Brown v. Decker, 142 Pa. 640, 21 Atl. 903.

We think the contract in this case unmistakably shows the purpose of the parties to constitute the chief engineer of the railroad the sole arbiter of all questions growing out of the execution thereof. The language is clear and inclusive. The announced purpose of their contract was "to prevent litigation or dispute" and "to provide for the prompt settlement of all questions that may arise." The scope of such action was stated to be questions "relating to the execution of the work provided for in this agreement." It also covered "the measurement, classification, and estimates of the same," and it was "mutually agreed that the decision, arbitrament, classification, and estimates of the chief engineer of this company shall be final and conclusive to both parties." Not only is such the case, but several other parts of the agreement singly and unitedly point to the engineer as the tribunal to settle all questions under the contract. Touching that matter it was aptly remarked by the court below:

"Other provisions of the contract between the parties, showing the relation of the chief engineer to the work, could be referred to, if it were necessary. There is, however, sufficient in what has been shown above to show that the provision for payment by the defendant for the work is so interwoven and correlated with the provisions for arbitrament by the chief engineer that it should not be held that they are severable in their nature, as urged by plaintiff's counsel."

Such being the case, it follows that any suit would be prematurely brought on the contract that was instituted before, or without regard

to, the arbitrament of the chief engineer, as provided for in the contract itself. We see nothing in the proofs or offers to constrain the court to rule otherwise.

[2] There is no suggestion that the arbitrator refused to act, or unduly delayed acting. Consequently the plaintiff, by bringing suit before he had an opportunity to act, could not affect the power of the arbitrator. Conneaut v. Pittsburgh, supra.

[3] The fact that when such unwarranted suit was brought the chief engineer signed and swore to the affidavit of defense of the company did not disqualify him from thereafter acting as an arbitrator. Barclay v. Deckerhoof, 171 Pa. 378, 33 Atl. 71. The contract itself made him the person to inspect and keep account of the work, and it was particularly his corporate duty, above all other officers of the company, to verify a statement of what work had been done under the contract.

The offers to prove fraud on his part in making the award disclose no such specific acts of commission or omission as would invalidate the award. The court rightly overruled the offers. Conneaut v. Pittsburgh, supra. Indeed, an examination of the award shows the utmost fairness on his part, and his allowance to the plaintiff in his final award of some $41,000, or $5,000 more than he stated in the affidavit of defense, shows not only his unprejudiced feeling toward the plaintiff, but his willingness to revise and, if necessary, correct his prior estimate.

[4] So, also, the objection that the chief engineer had no power to act, because he was not the person who filled that position when the contract was made, is without merit. The designation in the contract, "it is hereby mutually agreed that the decision, arbitrament, classification, and estimates of the chief engineer of the company shall be final and conclusive to both parties," was not of any particular person, but of the one who filled such office when the decisions contemplated were made. Conneaut v. Pittsburgh, supra.

Finding, therefore, no error in the record in the above matters, or in any other regard, the judgment below is affirmed.