SOUTHERN NEW ENGLAND R. CORPORA-
TION v. MARSCH.

No. 2487.

Circuit Court of Appeals, First Circuit.
Jan. 2, 1931.

Francis P. Garland, of Boston, Mass. (Joseph P. Sullivan and Hurlburt, Jones & Hall, all of Boston, Mass., on the brief), for appellant.

Ralph E. Tibbetts, of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

This action is based on a contract entered into in 1912 for the construction of fifty-eight miles of railroad in Massachusetts between the town of Palmer and the town of Blackstone. The appellee is a resident of Illinois, and the appellant is a Massachusetts corporation. Work was begun by the appellee in the summer of 1912 and continued until November of that year, when the appellant ordered the work suspended. For this suspension the appellee claimed damages, and in August, 1913, an agreement was reached whereby the appellee was to be paid $375,000 as damages and the work was resumed under the original contract modified in certain particulars as set forth in correspondence between counsel for the respective parties.

The contract was not for a lump sum, but compensation was based on unit prices for doing the various classes of work.

The contract contained the provisions usually found in construction contracts, viz.: That monthly estimates of work completed, at the unit prices, should be made up by the engineer for the railroad, and the amount less a certain reserve should be paid monthly to the contractor; that an adjustment of all disputed claims should also be made by the engineer of the railroad acting as umpire or arbitrator, and who, upon the completion of the work, should also make a final estimate of the amount due and unpaid, which would be conclusive upon both parties.

The provisions of the contract relating to the appointment, duties, and authority of the chief engineer, and under which the issues in this case arise, are as follows:

" 'Engineer' shall mean the Chief Engineer of the Southern New England Railroad Corporation, or such other person as the Corporation may from time to time appoint in his stead, to exercise the powers and perform the duties by this Contract conferred or imposed upon the Engineer."

"15. The Corporation shall have the right and be at liberty at any time before the commencement or during the construction of the work to have the Engineer make such changes in, additions to, or omissions or deviations from the plans, specifications or work as it may deem expedient, and the Contractor shall, in all cases, comply with such written orders in that behalf as may be given by the Engineer. Each such order shall specify the change, addition, omission or deviation, which has been made from the original plans and specifications, and only such written orders as are given by the Engineer will be recognized by the Corporation or shall be acted upon by the Contractor. If any such order directs a change in or addition to the work, resulting in the cost thereof being increased, the Contractor and Engineer shall, before the work called for by such order is commenced, ascertain and fix in writing signed by them respectively the precise changes as provided for above and the sum to be allowed therefor and to be added to the Contract price hereinafter mentioned; and the Contract price so increased as aforesaid shall be the full price to be paid by the Corporation for the completed work, provided, however, that as regards any such additional work the prices to be paid therefor shall as far as applicable be those mentioned in the tender attached hereto. The absence of any such agreement or writing shall be conclusive evidence that the Contract price hereinafter mentioned is to be the full amount to be paid for the work when completed, and that no extra charge or additional sum is to be claimed, allowed or paid because of any such change or addition. In no case and on no pretence shall any

charge for extras or any additional sum be claimed by the Contractor or paid by the Corporation unless the requirements of this clause shall have been strictly complied with in all respects. * * * "

"19. If any dispute or misunderstanding shall arise between the parties hereto regarding any of the stipulations and provisions contained in this Contract, or the true intent and meaning thereof, or the manner of performance thereof, or of any part thereof by either of the said parties, each and all of such disputes and misunderstandings shall be referred to the Engineer, who shall be and is hereby made, constituted and appointed *sole umpire* to decide all such questions, matters and disputes, including any arising regarding the amount and quality, character and kind of work performed and material furnished by the Contractor and the decision of the Engineer thereon in writing under his hand shall be final, conclusive and binding on the parties hereto, and each of the parties hereto expressly covenants with the other to abide by, observe, fulfil and keep each and every such award or decision so made as aforesaid. * * * " (Italics supplied.)

"21. Approximate estimates of the work done, made up from returns of progress measurements and computed at the prices specified in the preceding paragraph are to be made by the Engineer at the end of each calendar month, and on or about the twentieth day of the next ensuing month payments equal to about eighty-five percent of the value of the work done as shown by such approximate monthly estimates computed as above provided, less any sums which under any of the provisions of this Contract the Corporation may be entitled to deduct therefrom, shall be made to the Contractor upon presentation of written certificate of the Engineer showing the value of such work computed as aforesaid and stating that the work for or on account of which such certificate is granted has been duly performed and executed to his satisfaction and in accordance with the plans and specifications. The presentation of such certificate shall be a condition precedent to the right of the Contractor to be paid the said eighty-five percent, or any part thereof. The remaining fifteen percent shall be retained by the Corporation until the final completion of the whole work as additional security for the performance of this Contract by the Contractor, and when, in the opinion of the Engineer, this Contract has been completely performed in accordance

with the provisions thereof, and to his entire satisfaction, he shall certify the same in writing under his hand with a final estimate of the work done by the Contractor and a statement of the amount due and still unpaid, and within two months after the final completion and delivery of the whole work in place to the entire satisfaction and approval of the Engineer, the amount so certified by the Engineer as due and still unpaid, less any sums which the Corporation may be entitled to deduct therefrom, under any of the provisions of this Contract, shall be paid to the Contractor upon presentation of such final estimate and statement with the written certificate of the Engineer thereto, as by this Contract provided. * * *

"The presentation of such written certificates of the Engineer, and the production of the evidence called for by this clause, shall be a condition precedent to the right of the Contractor to receive or be paid the amount so certified as due and unpaid or any part thereof, and such certificate shall be conclusive as to the amount to be paid to the Contractor."

"23. * * * And no objection shall be raised to any decision of the engineer in the premises or to any certificate of the Engineer which is in this Contract provided for, on the ground that the Engineer is in the employ of either party hereto or is acting for or in the interests of either party or on the pretence that by reason of any order or statement which he may have made during the progress of the work he is disqualified to act as between the parties to this Contract as above provided on all matters which may arise as aforesaid, and actual fraud only shall disqualify him from acting as aforesaid, and the said parties hereto expressly covenant, promise and agree each with the other to accept each and all such decisions and abide by the same as final and conclusive."

There are other provisions of a similar nature in the contract or specifications defining the duties and powers of the chief engineer, but these sufficiently indicate the extent of his powers and the nature of his duties as bearing on the issues in this case.

During the first part of the work prior to the suspension, one H. R. Safford was chief engineer of the appellant and performed the duties required of him under the contract to the satisfaction of both parties up to the time of suspension; but although he continued to hold the office of chief engineer until March 1, 1914, by apparently a mutual understand-

ing he performed none of the duties required of the chief engineer under the contract after the suspension of work in November, 1912.

Following Mr. Safford's resignation on March 1, 1914, as chief engineer, J. M. Morrison was appointed to that position and continued to serve until long after the contract was finished and this controversy arose, but he never performed any of the duties of chief engineer under the contract. .

To perform the ordinary engineering services after the work was resumed in November, 1912, the corporation evidently relied upon one R. D. Garner, who was designated as engineer of construction, one Elmer A. Probst, and his successor, P. Daniel Fitzpatrick, designated as division engineer, and certain so-called resident engineers, who were subordinate to both the division and construction engineers.

From November, 1912, the engineer of construction was the head of the engineering service in connection with this job until January, 1915, when John B. Berry was employed by the appellant as consulting engineer. Berry personally, however, never came in contact with the contractor until after the work was completed. Whatever he did was in the nature of advice to his subordinates, and his orders were issued to them and never to the contractor; nor did the contract provide for any authority being vested in a consulting engineer; nor was such an official recognized in the contract. The only engineers recognized in the contract was a chief engineer, an engineer of construction, and a division engineer. After the resumption of the work in November, 1912, all changes in the plans and all monthly estimates were apparently made by either Garner, Probst, or his successor, Fitzpatrick, and without a protest as to their authority by the contractor, and if disputes arose between the contractor and either of these engineers, the auditor found that each party stated their position and the dispute was left open for final adjustment, and that the provisions of paragraphs 15 and 19 above quoted as to the duties of the chief engineer in such cases were waived by both parties.

The work of construction was completed in December, 1915, and the contractor soon after requested the division engineer to furnish certain information in connection with the final estimate of the balance due under the contract. On February 2, 1916, the president of the railroad corporation, notwithstanding Mr. Morrison still occupied the position of chief engineer, appointed Mr. Berry to act as chief engineer under the contract.

The appellant contends that this appointment was duly made under the provisions of the first paragraph of the contract above quoted.

Although the contract provided that the' final payment should be made within two months after the completion of the work, it was not until February 29, 1916, that Mr. Berry and the engineer of construction, Mr. Garner, issued a certificate signed by them jointly as to the amount due under the contract. Owing to the fact that Berry had only been connected with the work since January, 1915, he was obliged to rely on the information furnished by his subordinates, and it is evident that he and his assistants were having difficulty in adjusting the disputed questions, since as a result of the waiver of the provision, that the chief engineer should settle disputes as they arose during the work, and no other official having authority to do so under the contract, disputes which should have been settled when they arose were left until the contract was completed.

On February 29, 1916, Messrs. Berry and Garner in a joint letter inclosed a so-called final estimate and statement of work done in the construction of the road and the amount due and unpaid of $92,272.86. On March 9, 1916, the contractor replied that he did not consider the statement forwarded February 29, 1916, a final estimate, and the auditor so found, since the letter called on the contractor for further information, and the estimate was later added to. Further correspondence followed, each asking for further information in some particulars.

It is now suggested that the engineer's final certificate under the contract was to be only for "work done." That may be true as to his monthly certificates, but he was supposed to act as umpire in all disputes ·of whatsoever nature arising under the contract, including the proper interpretation of the contract itself; and it was provided in paragraph 21 that his final certificate should show not only a final estimate of the work done, but a statement of the "amount due and unpaid." The correspondence of the parties and their statements and counterclaims disclose that both parties understood that the final certificate was intended to show the unpaid balance due the contractor. In one of his letters to Mr. Marsch, Mr. Garner refers to the claim of the contractor for ballasting, which was for loss of profits on this item due

to the company taking over this work, for which the contractor claimed $39,600, the engineers Berry and Garner finally allowed $14,749.88, and the auditor $25,740.

On July 26 the contractor forwarded to Mr. Garner a statement showing the amount claimed by him to be due as $1,290,757.46. No further communication followed until October 30, 1916, when Mr. Garner wrote Mr. Marsch that he was forwarding an answer to the contractor's claim, and at the same time included two "Additions" to the "Final Estimate" sent February 29, 1916, allowing the contractor the additional sum of $26,423.84, making the total allowance up to that time of $118,969.73.

Following a conference over Mr. Marsch's claim in November, 1916, between Mr. Berry, Mr. Garner and a Mr. Miller representing the company, and Mr. Marsch and his engineer and superintendent, at which no agreement was arrived at, this action was brought in July, 1918.

The plaintiff's declaration consists of two counts, one for a breach of the contract, the other on an account annexed for liquidated sums claimed to be due under the contract, totaling, with interest, $773,849.62. The case was referred to an auditor to report on both the facts and the law.

The hearings were prolonged owing to the nature of the claims and the many details involved, and requiring an extensive examination of the locus of the work, including an examination of the nature of the soil and the difficulties encountered.

In July, 1929, the auditor filed a most carefully prepared report showing great diligence and thoroughness in his examination of the issues and the details. According to his report the plaintiff was entitled to recover the sum of $374,022.62.

Upon the report being received in the District Court, a jury was waived and the case heard by the judge on the auditor's report. The District Court sustained the findings of the auditor that there was due the plaintiff the sum of $374,022.62, and also allowed an additional sum of $52,212.79 for an item of "overhaul," resulting from a change in the location of the road—which item had been disallowed by the auditor—with interest from date of the writ.

From the decision of the District Court the railroad appealed, assigning numerous errors, but relying chiefly on the refusal by the District Court to rule that the plaintiff

was bound by the final estimate of Berry as engineer, and on a ruling by the District Court that the appellant had no right under the contract to appoint another chief engineer after the work was all completed, as the contract clearly contemplated that the engineer should be in touch with the work as it progressed, should perform various duties in relation to it, and at the end should make a final certificate; and also on the refusal of the District Court to find and rule that the plaintiff was not entitled to recover the sum of $52,212.79 for the alleged "overhaul."

Unless the certificate issued by Berry and Garner is to control, the auditor's report and the District Court's decision based thereon as to the sum of $374,022.62 must stand. We think the auditor erred in disallowing the claim for "overhaul." His reason for so doing, as he sets forth in his report, is that when it was ordered by the division engineer, while the plaintiff protested and served notice that he should make a claim for the extra cost based on the unit prices for overhaul fixed in the contract, the division engineer wrote him the following letter:

"Southbridge, Mass. Sept. 2, 1914.
"Mr. John Marsch, Southbridge, Mass.
"Dear Sir:
"Replying to your letter of September 1st relative to change in miles 24, 25 and 26, please be advised that I do not agree that the changes referred to have in any way increased the unit cost of doing work. On the contrary, it is my opinion that the change will result in a saving to the Contractor, as by changing the line the Contractor has been relieved from the work of re-constructing Main Street between Stas' 1300 and 1320, which change more than offsets a slight possible increase in cost due to a longer haul.
"Yours truly,
"E. A. Probst, Division Engineer."

This letter the auditor construed to be refusal by the company to allow anything extra for the overhaul, and since the corporation refused to be bound, no contract to pay was implied and nothing could be recovered. Additional work required through changes in the plans, if ordered by the engineer, especially when the prices for that class of work was fixed in the contract, as in this instance, was covered by the terms of the contract, and the right of recovery therefor is not an implied promise, but under the contract.

We think the auditor erred in his construction of the letter and of the contract, in

view of the waiver of certain provisions by the parties since the resumption of the work in November, 1912. Who ordered the change in the location of the road which compelled the "overhaul" does not appear, but since only the engineer could make changes in the plans under paragraph 15 of the contract, and as it is after the resumption of the work in November, 1912, it must have been done by either the engineer of construction or by the division engineer without any authority under the contract; but both parties appear to have waived the provision requiring the chief engineer to act. The auditor so found. This change in the plans, however, while made by the engineer or engineers actually in charge, was accepted and carried out by the contractor, but there was no one authorized to settle the disagreement which arose as to compensation. The auditor found in respect to other items: "When questions arose, as they frequently did, of increased cost, claims for extras, and other matters which under the terms of the contract would have been determined by an engineer, the resident engineers, or the division engineer, or the construction engineer, usually announced the position of the defendant, and the plaintiff announced his position, and the questions remained undecided. Many of them have become the subject of this litigation."

This, we think, is precisely what took place as to this item of "overhaul." There was no one to pass on the disputed point. Probst, the division engineer, who had no authority under the contract to act as an umpire in the premises, merely stated the company's attitude. His letter was not even a categorical refusal to pay, but simply an expression of his individual opinion, that the saving of the expense to the contractor by the change was equal to the expense entailed by the overhaul. No evidence appears in the record that such was the case. The District Court held, and we think correctly, that this controversy, like many others over disputed items, was left open to be later determined by the "Engineer," or by suit, if no "Engineer" acted, or was appointed to act in accordance with the contract.

■ It is urged that the plaintiff did not present his claim for this sum to the division engineer as required by the contract. It clearly would have availed him nothing to present a claim for this work to the division engineer, as there was no one authorized to pass on it. The division engineer had already expressed his opinion on it. The law does not require useless things to be done.

This item, so far as the record discloses, stood in no different position from that of numerous other items forming the controversies in this action. We therefore are of the opinion that the court below was right in adding this to the sum which the auditor found was due, making a total of $426,235.-41, to which, in case of recovery, should be added interest from the date of the writ.

■ The only issue left is whether the Berry-Garner certificate or certificates have the effect of an engineer's final certificate under article 21 of the contract above quoted, and precludes the contractor from recovering any more than the sum set forth in the certificate signed by Berry and Garner, with the additions afterward allowed by him.

This depends on whether Mr. Berry in issuing such certificate was acting as chief engineer within the meaning and spirit of the contract. While the auditor held: "1. The defendant retained the right under paragraph 1 of the printed contract of July 20, 1912, to appoint a person after the completion of the work in the stead of its chief engineer to exercise the powers and perform the duties by the contract conferred or imposed upon the engineer, meaning such duties as then remained for an engineer to perform;" he also held:

"2. The defendant never exercised that right.

"3. The appointment of Mr. Berry by Mr. Smith on February 2, 1916, was not the appointment of the impartial umpire contemplated by the contract.

"4. The appointment of Mr. Berry by Mr. Smith on February 2, 1916, was outside the limits of Mr. Smith's authority, and was not an appointment by the defendant within the meaning of the contract.

"5. There was never any legally effective ratification by the defendant of this appointment.

"6. The objections stated in rulings Nos. 2, 3, 4 and 5 were never waived or eliminated by any action of the plaintiff.

"7. Independently of rulings Nos. 2, 3, 4, 5 and 6, Mr. Berry never made any final estimate or certificate under the terms of paragraph 21 of the contract, or rendered any final decision binding on the plaintiff under the terms of that part of paragraph 23.

"8. The plaintiff did not by his letter of November 4, 1916, interpreted in the light of the circumstances immediately preceding and immediately following the writing of that

letter, accept Mr. Berry as an arbitrator outside the terms of the contract.

"9. If the plaintiff did by the terms of his letter of November 4, 1916, accept Mr. Berry as an arbitrator outside the terms of the contract, the rendering of a decision by Mr. Berry in that capacity is not made a condition precedent to the plaintiff's right to bring a suit; and for that reason the absence of such a decision does not prevent the plaintiff's recovery.

"10. On the facts hereinbefore stated, and the further fact that Mr. Berry, with the defendant's approval, never made any further estimate or gave any further certificate, I find that the defendant waived the provisions of the last sentence of paragraph 21 of the contract making the presentation of a written certificate of the engineer 'a condition precedent to the right of the contractor to receive or be paid the amount so certified as due and unpaid, or any part thereof;' and the provision that 'such certificate shall be conclusive as to the amount to be paid to the contractor;' and waived any implied condition precedent in any separate agreement for arbitration, if there was any such separate agreement or implied condition."

The District Court held that there was no authority under the contract after the work was completed to appoint a chief engineer in place of the one then holding the office, that the contract contemplated that the chief engineer, who made up the final certificate, must be one who had been in touch with the work as it progressed, although the court conceded in case of emergencies, such as illness or death, it might become necessary to appoint a man who had had no contact with the work and who would be obliged to rely on his subordinates for information in making up a final certificate as to the balance due the contractor. Eyre-Shoemaker v. Buffalo, R. & P. R. Co. (C. C. A.) 193 F. 387.

Whether the court's construction of the contract is correct we do not decide, as we think the auditor's report shows that Mr. Berry was not only disqualified to serve in such a capacity, but was not appointed by the corporation with any intent that he should act as "sole umpire" in deciding contested issues between the company and the contractor; nor did he so act in making up the certificate presented the appellee. We therefore do not think it necessary to pass on the issues of whether the president of the corporation by whom he was appointed had the power to appoint, or whether after suit was brought the corporation could ratify his appointment as chief engineer.

■ While the contract provided that the contractor could not complain because the engineer was employed by the company, or that he was acting for the company, or on any other grounds the drawer of the contract could think of, with the only exception of actual fraud, which would also disqualify one from acting in such capacity, we still think such contracts must be construed to contemplate that the person so appointed or acting should act as an umpire as is provided in section 19, and not solely in the interest of one party. Both parties are entitled to his honest judgment in the premises.

Assuming that the corporation under paragraph 1 of the contract could select any other man than its then chief engineer to perform his duties and act in his stead under the contract, and could so appoint one after the contract was completed, and that the president of the company either had the power to appoint, or, if not, that his action was duly ratified by the corporation after suit was brought, we are of the opinion that the acts of Berry clearly show that he did not in making up the alleged final certificate act in any sense as an umpire between the parties. The wide discrepancies between the final certificate of Berry and Garner and the findings of the auditor and the court below alone are sufficient to arouse strong suspicion as to the fairness of Mr. Berry in passing on the plaintiff's claims; and this is converted into a conviction by the auditor's findings, which clearly show that Berry was not only disqualified to act as an umpire between these parties, but that he did not exercise his honest judgment in his final conclusions. The auditor found as a fact that in several instances while the work was in progress Mr. Berry knowingly withheld sums from monthly estimates to which Marsch was entitled under the contract as modified by the attorneys; he directed his subordinates not to allow for "overbreak" which he knew the plaintiff was entitled to; and in other particulars knowingly acted in violation of the terms of the contract and against the plaintiff and in the interest of the corporation he represented. The effect of which, the auditor held, was "to deprive the plaintiff monthly of considerable sums of money to which he was legally entitled and thus weaken his financial position." All of which disqualified him to act as engineer in making up the final certificate.

The auditor also found that this was car-

ri.d over into the so-called final certificate in that Mr. Berry in making up this certificate deliberately refused to allow the contractor for "overbreak" which he was clearly entitled to under the contract, and in other respects did not exercise his honest judgment as between these parties. Though the auditor out of kindness of heart allowed there were some palliating circumstances, he held they did not legally justify the conduct of Mr. Berry either while acting as consulting engineer or as engineer.

■ Again, a final certificate which the record shows was not found in accordance with the intent of the parties to the contract and which the auditor found was not treated by the parties as a final certificate, but rather as a basis for negotiations or compromise, is not such a final certificate as the contract provided should be binding on the two parties and thus preclude the contractor from recovering more. As neither Mr. Berry nor any other engineer ever made up a certificate that could properly be considered final within the meaning of the contract, or attempted to make any other certificate than the one above referred to, the company must be deemed to have waived its rights or unreasonably failed to comply with the provisions of the contract in this respect, and the plaintiff may recover in this action what is fairly and justly due him. The ruling of the court below, therefore, as to the authority of the company to appoint an engineer after the completion of the work, even if error, was not prejudicial, as according to the report of the auditor, Berry, even if legally appointed, did not perform the duties required by the "Engineer" in the manner contemplated by the terms of the contract in making up the certificate presented to the appellee, viz., to act as an umpire in the premises. His acts throughout were clearly biased and deliberately unfair and hostile to the plaintiff.

■ The mere fact that an engineer is in the employ of one of the parties and acts for him, it is true, will not nullify his work as an umpire under such a contract, if his final conclusions appear to be the result of an exercise of an honest judgment, Sweeney v. United States, 109 U. S. 618, 3 S. Ct. 344, 27 L. Ed. 1053; Choctaw & M. R. Co. v. Newton et al. (C. C. A.) 140 F. 225; but where the person acting in that capacity, both during the progress of the work and in making up the final certificate, deliberately rules in favor of the company and against the contractor, and knowingly in violation of the terms of the

contract, as the auditor found Berry did in this case, it cannot be said that he has acted honestly, in good faith, and in accordance with the intent of the contracting parties, as expressed in the contract, and his findings are not binding on either party.

The judgment of the District Court is affirmed, with interest and costs to the appellee.