ELBRIDGE BERRY & *al. versus* SAMUEL D. REED.

In assumpsit for the price of logs sold, a letter written, long after the sale, by the defendant to the plaintiffs, complaining of the quality of the logs, is not admissible on the part of the defence.

When parties to a contract of a sale of logs mutually select a sworn surveyor to determine the quantity of each particular quality thereof, who thereupon makes a survey and renders his certificate thereof, his decision of the subject matter is, in the absence of fraud and of any unfair practices by the party claiming to uphold it, conclusive upon the parties.

When a witness is offered as an expert, it is for the presiding Judge to determine, from the testimony adduced respecting him, whether or not he is entitled to be so considered.

ON EXCEPTIONS from *Nisi Prius*, DICKERSON, J., presiding.

ASSUMPSIT upon one of several promissory notes given by the defendant to the plaintiffs for logs sold.

The facts appear in the opinion.

*J. Baker*, in support of the exceptions.

*A. Libbey*, for the plaintiffs.

BARROWS, J. — Assumpsit upon a promissory note given with others for a lot of logs sold by plaintiffs to defendant in September, 1863, at which time, according to the testimony offered by both parties, they agreed upon the price per M. for merchantable and mill-refuse pine and also upon the price per thousand to be paid for spruce, and that one Palmer, a sworn surveyor, should survey the logs, which he thereupon did, and made out his survey bills, indicating the quantity of each of those particular qualities. It is also undisputed that the defendant received the logs and had manufactured "the great bulk of them" into lumber long before September 25, 1864, when he wrote a letter to the plaintiffs, the exclusion of which forms the ground of the first exception taken to the rulings of the Judge presiding at the trial. The defendant resists payment of the note sued, asserting

that the plaintiffs warranted the logs to be "a good lot of logs," and that they proved to be very rotten inside, though many of them appeared sound on the outside.

His complaints to this effect are spread out with abundance of reiteration in his letter to the plaintiffs of Sept. 25, 1864, and his counsel now claims that this, his own written statement of his case, ought to have been permitted to go to the jury as evidence. To what end? The letter was no part of the transaction. It was written long after he had manufactured "the great bulk" of the logs, and, judging from its tenor, after he had been threatened with a suit upon the note.

He was in Court at the trial with his witnesses, making the same complaint, and offering testimony *under oath* to support it. He could not corroborate that testimony by showing that at a previous time he had made a written statement of similar purport, not under oath, and had transmitted it to the other party.

There was no pretence that any acts, sayings or omissions on the part of the plaintiffs, upon the reception of the missive, could be construed into an admission of its truth. The assertions of a party in his own favor, made in presence of the other party, or communicated to him, derive their force as evidence only from something in the conduct of the other party, and not from any independent virtue in themselves. Where testimony of communications, verbal or written, between the parties, relative to a past transaction which is in controversy, is received in evidence, what is said or written by the party offering them is admissible only so far as it tends to elucidate or make intelligible what is thereupon said or done by the party against whom it is offered. A party cannot be permitted to manufacture testimony in his own favor in the manner proposed by the defendant here. The impudence of a recusant unscrupulous debtor is not allowed to avail him as substantive evidence. It is true that, in the course of the trial, evidence was introduced by the plaintiffs that, *prior to that time*, defendant had not notified plaintiffs

of any dissatisfaction on his part on account of the quality of the logs, but had repeatedly promised to pay his notes. That he did so notify them *at* that time was not denied, and the letter did not tend to contradict the testimony offered by the plaintiffs.

The defendant, among other witnesses, offered one George Duly, who testified that he helped saw the logs for several months, and he described their condition at the time. He also testified that he had worked at sawing lumber ten years or more, and was thereupon asked by the defendant the question,—"how much less, if anything, was the lot of logs, as he found them, worth than if it had been a good lot of logs?" The question was objected to and excluded, and exception taken.

There is a discrepancy in the decisions of different States as to the admissibility of the opinions of witnesses as to the value of property with which they are acquainted where the value properly comes in question.

In New Hampshire, they are never admitted. The general rule that witnesses shall testify to facts and not to opinions, leaving the jury to draw the conclusion from the facts stated, is carried so far as to exclude them altogether. *Rochester* v. *Chester*, 3 N. H., 349; *Peterboro'* v. *Jaffrey*, 6 N. H., 462; *Beard* v. *Kirk*, 11 N. H., 397.

Even the opinion of an experienced teamster, as to the value of horses, harnesses and wagons, which are familiar to him, is not admitted, and the rule is laid down that the opinions of witnesses are not to be received in evidence merely because the witness offered may have had some experience or greater opportunities of observation than others, unless the opinions relate to matters of skill and science. *Robertson* v. *Stark*, 15 N. H., 109.

But in several other States, where the question has arisen, the opinions of witnesses who are acquainted with the property are admitted as to the value of it when the value is a subject of controversy.

It is so settled in Massachusetts. *Vandine* v. *Burpee*,

13 Met., 288, 326, 327; *Shaw* v. *City of Charlestown*, 2 Gray, 107.

So in New York. *Brill* v. *Flagler*, 23 Wend., 354.

It is held in that State that witnesses acquainted with personal property and its value, may testify to their opinion of its value; that the rule that witnesses must state facts and not opinions has no application to such cases. *Rogers* v. *Ackerman*, 22 Barb., 134.

So in Pennsylvania. · *Kellogg* v. *Krauser*, 14 Serg. & R., 137, where TILGHMAN, C. J., says, that, though an opinion of the value of land is not strictly a fact, yet "such opinions are every day received as evidence, and it is difficult to conceive how the value of land can be proved without them. It is a kind of evidence so commonly admitted without dispute or objection that I have no doubt of its legality."

Such testimony was received, though objected to, in *Warren* v. *Wheeler*, 21 Maine, 486, and the case is referred to by the Court, in *Vandine* v. *Burpee, ubi supra.*

Perhaps it might be said that the question proposed to Duly called for something besides the opinion of the witness as to the value of property with which he was acquainted, and which he had described; that it implied such a knowledge of the lumber trade as would enable him to say what was "a good lot of logs" and what "a good lot" was worth on the river, and that there was no evidence that he was an expert in the trade, though he had been employed as a manual laborer in the manufacture of lumber for some years. It does not appear on what ground the question was excluded. If it were because the Judge presiding at the trial was not satisfied that the knowledge and experience of the witness were sufficient to make his opinion of any value, we should be slow to disturb the verdict for such exclusion, for the Judge before whom the cause is tried, and whose duty it is when a witness is offered as an expert to determine from the testimony adduced respecting him, whether he is entitled to be so considered, is in a much better position to decide whether testimony of this description (which

should always be cautiously received) is more likely to mislead and confuse the jury than to be of service in arriving at the truth, than the law Court can be upon the hearing of exceptions. The doings at *Nisi Prius*, if subject to revision, ought not to be set aside in such case unless palpably erroneous and materially injurious to the excepting party.

In the case at bar, it is plain that the exclusion was entirely immaterial, if the survey is to be deemed conclusive.

It is conceded that Palmer, who surveyed the logs and made out his survey bills indicating the quality of each of the particular qualities, was agreed upon by the parties to perform this service. What was the use or object of such an agreement, unless his decision, in the absence of fraud, was to bind the parties? Surveyors of logs, as appears by R. S., c. 41, § 22, prescribing their duties, are to "*inspect*, survey and measure all mill logs floated or brought to market, or offered for sale in their respective towns, and *divide them into several classes, corresponding to the different quality of boards and other sawed lumber which may be manufactured therefrom;* and they shall give certificates under their hands of the quantity and *quality* thereof to the person at whose request they are surveyed." The word "survey" means something more in the language of the lumber trade than a mere view and admeasurement. It includes a determination of the quality as well as the quantity of the timber or lumber surveyed; plainly not a conclusive determination, *unless the parties agree upon the individual* who shall make it; but when they do thus agree, in the absence of fraud and of stipulations to the contrary, it must be understood to mean that the judgment of the individual agreed upon shall bind the parties as to those matters embraced in the survey.

Thus, in *Robinson* v. *Fiske*, 25 Maine, 401, where there was a contract for the cutting and hauling of the *sound* pine timber *suitable for boards*, on certain tracts of land, to be paid for by the M, the timber to be scaled by one of three persons named, or by some other man to be chosen by the

parties, which was done; and upon suit brought for the price per M, according to the surveyor's returns — the defendants offered to prove that all the *logs* except ten or twenty were drawn to their mills the same spring, and when they came to manufacture them it was found that over six hundred thousand feet, which had been included in the scale and admeasurement of the scalers, was found to be unsound and totally unfit for boards, and that they had paid more than would be due under the contract for sound pine timber suitable for boards; but the testimony was excluded; and held *rightly* excluded; the Court deciding that " the report of the surveyors, in the absence of fraud or anything tending to show unfairness on the part of the plaintiff in procuring the result, should be conclusive between the parties; and that the evidence offered to impeach it was inadmissible," and rendering judgment for the plaintiff accordingly.

The case is not distinguishable in principle from the one at bar. The plaintiff there, to entitle him to the amount claimed, was as peremptorily required to show that he had hauled *sound* pine timber *suitable for boards*, as he would be, *if he had warranted them such*, in a suit for the price.

It seems to have been considered by the Court that "the object of *agreeing on the surveyors* was to settle conclusively the amount of timber cut, and so what, according to the rate agreed upon, the plaintiff was entitled to receive."

It is the duty of the surveyor so to *inspect* the logs he is called upon to survey as to enable him to determine the quality of boards and other sawed lumber which may be manufactured from them. Doubtless the surveyor agreed upon by the parties in the present case exercised his judgment in making allowance for crooks, rots and other defects, and there is nothing to indicate that it was not honestly exercised in determining, as his duty required, so as to divide them into classes indicating the quantity of each particular quality. For aught that appears, the rotten logs of which the defendant complains may have been rejected in the survey, or allowance made for their defects. But, how-

ever this may be, inasmuch as the parties mutually selected him to determine the quantity of each particular quality, they must abide by his decision as to the quality as well as the quantity, in the absence of fraud and of any unfair practices by the party claiming to uphold that decision. The question whether the plaintiffs had kept their warranty, if they made one, was to be determined then and there, by a tribunal mutually agreed upon.

That the logs were not a good lot of logs, in the opinion and according to the return of the surveyor, is not pretended. Mere errors in judgment which he may have committed cannot here be revised.

It is manifest, from this view of the case, that, in our opinion, the instructions of the Judge presiding at the trial, on this branch of the case, were sufficiently favorable to the defendant.                          *Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON and DANFORTH, JJ., concurred.