Weldon, J.,
delivered the opinion of the court:
The claimants in the year 1889 were builders and contractors, doing business as Thomas & Driscoll, and as such entered into an agreement with the defendants to make improvements upon the United States court-house and post-office in the city of Atlanta, State of Georgia, as shown by the contract of January, 1889, filed as an exhibit to the original petition, marked “A.”
To the contract are annexed very voluminous specifications detailing the character of the work to be done under said contract. The specifications applicable to the items in controversy are set out in the findings.
The contract price of the work is $104,500, to which was added, by the stipulation of the parties, the sum of $531.94 for extra work, making the aggregate sum of $105,031.94, upon *59 wbicb was paid the sum of $103,684.14. By agreement of the parties, certain items of the work were omitted, which amounted to $535.80.
A deduction of $912 was made by the defendants because marble tiling-was not laid in the first and second stories of the old building; and that item so deducted is one of the disputed items of this case, the defendants insisting that by the terms of the agreement it was the duty of the claimants to put in such tiling, and the claimants insisting that they were not bound to do so by the obligation of their agreement.
As is shown in the findings, the said sum of $912 was deducted from the pay of claimants because of their failure.
The third finding shows that the claimants made a contract with the Warner Elevator Company to put in their system, and the company made an expenditure of the sum of $2,150 in so doing; but the defendants objected and insisted upon a form of elevator manufactured by Otis Brothers & Company. The claimants then contracted with the last-named company at an increased expense of $1,150, and they now claim the increased expense as a just demand against the defendants. The claimants insisted that the Warner system complied with their obligations, and changed to the Otis system under protest.
In consequence of the use of the Otis system a different plan of pumping was required, and the difference in the cost of the two systems of pumping was $1,690, which additional expense was borne by Otis Brothers & Company and paid by defendants; and upon that difference of cost the claimants now sue to recover the sum of $338 as a percentage of profit on the increased cost.
In the fourth finding is an itemized account of labor performed and material furnished by the claimants amounting to the sum of $7,478.85, which they claim was extra work beyond the requirements of the contract and specifications, and for which they now seek a judgment. It is insisted by the defendants that the claimants were bound by their contract to perform such labor, and that therefore compensation is embraced in the consideration of $104,500.
The first item in dispute is the $912 deducted by the defendants because of the failure and refusal of the claimants to lay tiling in the first and second stories of the building. As is *60 said, tbe claimants protested against tbe deduction upon tbe ground that they were under no obligation to put new marble tiling on tbe first and second floors; but if forced to they would repair tbe old tile, and that a deduction of $912 was a proper deduction as tbe difference between new marble tiling and what they did by way of repairing tbe old work.
By reference to tbe specifications entitled “ Changes in tbe old work,” it will be seen that no mention is made by specific description to tbe main floors of tbe building, although many other items of work are specified in detail. Nothing is said as to tbe change in tbe floor from tbe old material to marble tiling, as contended by tbe defendants. Tbe item, amounting, as it did by tbe agreement of tbe parties, to the sum of #912, was a very substantial one, and its omission, when so many other items of much less importance are specified, tends very materially to strengthen tbe contention of tbe claimants that they were not bound to lay new marble tiling, as contended by tbe defendants.
It is insisted that it comes under tbe bead of marble work, as provided for in the specifications.
Tbe main floors of tbe first and second stories of tbe building are not referred to by name or by necessary implication in tbe terms of tbe marble clause of tbe specifications. If marble tiling bad been intended for tbe two named floors, it is most probable that it would have been referred to and provided for in that branch of tbe contract which refers to “ changes in old work.”
Marble tiling, as to tbe first and second floors, not being provided for by tbe terms of tbe agreement, tbe defendants were not justified in making tbe deduction, and upon that item of tbe claim the claimants have a right to recover.
Tbe next item of tbe claim grows out of tbe construction of tbe elevator. It is shown by finding hi that in tbe prosecution of the work the claimants contracted with tbe Warner Elevator Company to put in one of their make at a cost of #2,150; that the company bad partially performed their agreement when the defendants requested and required claimants to put in a design and pattern manufactured by Otis Brothers, which they did under protest, at a cost of #3,300. Tbe work done by tbe Warner Company was utilized by tbe Otis Com- *61 pa-ny and accepted by the defendants. The claimants filed with and as a part of the specifications an engraving or picture of an elevator car and appendice bearing the imprint, “Otis Brothers & Co., New York.”
The elevators of the two companies were substantially similar except in the motive power, the “tank system” being-adopted in the Otis plan, which cost the sum of $1,690, which was paid by the defendants, the Otis Company. A reasonable per cent of profit on that work would amount to the sum of $338.
The street-pressure system which would have been adopted with the Warner plan would not have required the tank and pumping plant of the Otis system.
In the specifications, under the head of “Hydraulic elevator,’-’ it is said:
“The following specification is intended to describe in general terms what will be required. Nothing in this description, however, is intended to express a preference for any particular manufacture. The contractor to furnish and erect one hydraulic passenger elevator, including car, cylinder, framework, bolting and controlling-gear annunciator, etc., in accordance with the general specifications and drawings which shall have been furnished by the contractor with his proposals. Bach bidder to submit with his proposals detailed drawings and specifications of the car-bolting apparatus, methods of erection, position of machinery, etc.’ The passenger car to be the largest size suited to the shaft. The- design and description of car to be submitted with proposal.”
The increased cost to claimants between the Warner and the Otis systems was the sum of $1,150, and for that amount the claimants seek a judgment. While the specifications intended to describe in general terms the requirements of the contract on the subject of the elevator, they expressly disclaimed any purpose to prescribe or require any particular manufacture. Besides the claimants had, upon the faith of the defendants in difference as between systems, made a contract with the Warner Company, in the performance of which the company had done a substantial portion of the work when the claimants were notified by the defendants that they must adopt the Otis system.
In the construction of the elevator the Otis Company used the car which had been manufactured by the Warner Com *62 pany, by and with the consent of the defendants; and the only substantial difference between the two systems consisted in the pressure, one being the tank pressure and the other the street pressure. For that difference the defendants paid the Otis Company the sum of $1,690 without making any claim against the claimants. The change from the Warner system to the Otis system was made by the newly appointed architect for the reason that he construed the contract as calling for the Otis system. He did not insist or claim that as a system the Warner plan was defective and unfit for the purpose and requirement of the building, but that the Otis system was the one recognized by the contract and should therefore be adopted. Construing the rights of the parties by the terms of the specifications and their acts in the execution of the work, the court is of opinion that the use and profert of the Otis cut representing an Otis car did not have the effect of modifying and changing the force of the words, “nothing in this description, however, is intended to express a preference for any particular manufacture.” The form of the car did not seem to be a material consideration with the defendants, as they used the car which had been made by the Warner Com- ’ j)any in the construction of the elevator under their agreement. The plan was changed by the newly appointed architect for the reason that he so construed the specifications as to give him that right and for the further reason that he had a preference for that system. The defendants, before the change, were notified by the acts of the claimants that they had decided to adoiit the Warner system by making a contract with that company for their system and doing work under the contract, with the knowledge and consent of the defendants.
Taking the agreement in its specifications and the acts of the parties in the execution of the agreement, the court determines, as a legal conclusion, that the increased expense between the two systems which the claimants have been compelled to pay is a just and legal demand against the defendants and upon that item of the claim there should be a recovery.
As to the claim of a profit on the difference between the cost of the Warner and the Otis system, amounting to the sum of $330, it is sufficient to say that the claimants refused to put *63 in the Otis plan, so far as the tank and pumping plant is concerned, and for that the defendants dealt with, the Otis Company and paid them in fall for the construction of it. That item is disallowed.
The next subject of controversy grows out of the items of labor and material embraced in the fifth finding, consisting of 68 items and amounting in the aggregate to the sum of 87,478.85. That amount of work was done by the claimants for which they have not received compensation unless it be embraced in the aggregate consideration of the contract. It is insisted by claimants that it is in addition to the work required by the specifications and therefore extra; while the defendants insist that it falls within the requirements of the specifications and that therefore the claimants are not entitled to specific compensation. While the contract itself is brief the specifications and plans, which by the terms of the agreement are made a part of it, are voluminous and somewhat difficult of interpretation. If the work had been a continuous and simple building of the house the difficulty would be very much lessened; but when the labor and material are made applicable, as they are, to an improvement of an old building, the condition becomes somewhat complicated.
The contract provides that the claimants are to “ add two stories thereon and to rebuild and complete main building, including rear extension, and makeall attendant changes in strict accordance with drawings, terms of advertisement, and specifications” for which an aggregate sum of $104,500 was to be paid. The question which arises in the claim of the items of the fifth finding is, Do they come, either by express specification or necessary implication, within the terms of the agreement amplified by the drawings and specifications? It would enlarge the opinion of the court to unreasonable bounds to discuss in detail each item, and we therefore by way of abbreviation indicate which of the smaller items are to be allowed as extra and which are to be disallowed as coming within the terms or spirit of the claimants’ agreement.
The judgment of the court is that the claimants recover the sum of $5,244.62, as indicated in the conclusion of law.