ARTHUR H. JACQUES, In Equity vs. OTTO NELSON COMPANY, et als.

York.    Opinion November 13, 1920.

*Bill in equity to enforce lien claim.    Counter charges.    The decision of an architect
vested with power under a building contract between the parties to decide
questions that may arise during the progress of the building, is
binding if within the limits of the matters committed to
him so long as he does not act unreasonably,
capriciously, arbitrarily, wilfully, or
fraudulently.*

Bill in equity to enforce a lien, brought by a subcontractor against the contractor
to recover a claimed balance of $494.13.   The Otto Nelson Company seeks to
charge against this balance the sum of $327.95 expended by it in repainting, and
of $280.16 in applying a coat of shellac, both in accordance with the orders of
the architect.   The case was heard by a single Justice, both items of counter
charge were allowed, and therefore the bill was dismissed.
Upon appeal by plaintiff it is,   .

*Held:*

1.   That the finding of fact by the sitting Justice that the painting by the sub-
contractor did not meet the contract requirement and therefore the expense of
repainting should be allowed, was fully warranted by the evidence.

2.   That the contract did not require the plaintiff to apply a coat of shellac to the
woodwork.   When a build'ng contract makes the architect an arbitrator
between the parties to decide practical questions that may arise during the
progress of the building, his decision within the limits of the matters committed
to him is binding, so long as he does not act unreasonably, capriciously,
arbitrarily, wilfully or fraudulently.   But he cannot require the performance
of additional work not within the terms and fair intendment of the contract.

3.   The requirement here was not within the terms or intendment of the contract,
but involved additional work not contracted for.   Therefore the counter charge
of $280.16 should not have been allowed.   The plaintiff is entitled to recover
his lien claim of $494.13 less the cost of repainting $327.95, a balance of $166.18
with interest from date of the bill.

This is a bill in equity brought by the plaintiff, a subcontractor,
against defendant, Otto Nelson Company, principal contractor, to
enforce a lien on land and buildings in Sanford, Maine, owned by

The Sanford Building Corporation, for a claim for labor performed and materials furnished under a contract for painting Sanford Trust Company Building. Plaintiff claimed a balance of $494.13 was due him. Defendant sought to charge against this balance the sum of $327.95 expended by it in repainting, and the sum of $280.16 in applying a coat of shellac, both in accordance with the orders of the architect. The case was heard by a single Justice, who allowed both items of the counter claims, amounting to $608.11, which exceeded the balance claimed by the plaintiff, and ordered that the bill be dismissed. From which decree plaintiff took an appeal. Appeal sustained. Bill sustained with costs. Decree in accordance with opinion.

Case stated in the opinion.

*Willard & Ford*, for plaintiff.

*Gillin & Gillin, and John V. Tucker*, for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, JJ.

CORNISH, C. J. This is a bill in equity brought to enforce a lien for labor performed and materials furnished in connection with the construction of the Sanford Trust Company Building at Sanford, the balance amounting to $494.13. The Otto Nelson Company of Bangor was the general contractor. The plaintiff, under the name of the Arthur H. Jacques Painting Company of Boston, Mass., was the subcontractor for the painting under the Nelson Company. Holmes and Winslow of New York City were the architects.

This subcontract between Jacques and the Nelson Company was made by correspondence and was closed September 19, 1916, for the sum of $1152. The material clauses, as stated in the letter of acceptance, are these:

"To provide all materials and perform all labor required for the painting, according to the plans and specifications prepared by Messrs. Holmes and Winslow, 103 Park Ave., N. Y. and to their satisfaction and acceptance." "Our relations in respect to this subcontract are to be governed by the plans and specifications named above and by the general conditions of the general contracts as far as applicable to the work thus sublet." This was confirmed by the plaintiff under date of September 19, 1916.

The plaintiff entered upon his contract and claims that of the $1152 contract price, and $17.13 extras, making a total of $1169.13, he has received only $675, and this bill is brought to recover the balance, $494.13. The Nelson Company seeks to charge against this balance two amounts, one for $327.95 expended by it for labor and materials in repainting in order to make the work satisfactory and acceptable to the architects; and the other for $280.16, the expense connected with a coat of shellac ordered to be put on by the supervising architect as a part of the contract requirements, and upon plaintiff's refusal, applied by the Nelson Company at its own expense.

The cause was heard by a single Justice who allowed both of the counter claims amounting to $608.11, and as this sum exceeded the balance claimed by the plaintiff, ordered that the bill be dismissed. There are some slight differences in the figures as stated in the answer, decree and briefs of counsel, but they are so trifling as not to affect the result. The case is now before the Law Court on appeal from this decree. The only points of controversy are these two counter claims, and we will consider them separately.

1. COST OF REPAINTING, $327.95.

The sitting Justice found as a fact that the plaintiff's painting was unsatisfactory to the architects and was not accepted by them. He further found that in so doing they acted reasonably and within their contract rights and duties. He therefore allowed this item as a countercharge. His decision on controverted facts must stand, like the verdict of a jury, unless it is manifestly wrong. A careful study of the evidence as to the character and quality of the work convinces the court that the findings of the sitting Justice on this point were warranted by the facts. Evidently the job did not meet the contract specifications, and it is as much the duty of the architect under a contract like this to reject work which falls below the contract standard as to accept what is up to that standard. The decision allowing this countercharge of $327.95 as an off-set against the plaintiff's balance is sustained.

2. COST OF SHELLAC COAT, $280.16.

The contention on this point arises over the following paragraph of the specifications: "All wood of basement, of first story, mezzanine and upper floors to be filled, stained and given a waxed finish. Birch, stained 'mahogany', hand rails of stairs treated similarly."

The woodwork was filled and stained by the plaintiff as required by this specification, the particular kind of mahogany stain having been selected by the supervising architect and used at his request. After the filling and staining were completed, the same supervising architect decided that a coat of shellac was required in order to produce a proper foundation for the wax. It needed more body as he testifies. He therefore ordered the plaintiff to put on a coat of shellac before waxing. This the plaintiff refused to do except as an extra, claiming that the specifications did not call for shellac on the interior finish, and that it was not included in his contract. The architect insisted and finally the Nelson Company expended $280.16 in having the shellac coat put on by other parties, and then the plaintiff applied the final coat of wax. The sitting Justice allowed this counterclaim also, but we think the plaintiff's contention on this point is well founded, and that this item should be disallowed. The question is, did the architects under the contract and specifications have the right to call for this coat of shellac. This is a question not of fact but of legal construction of the contract and specifications.

The defendants rely first upon the provision in the subcontract by which the plaintiff bound himself "to provide all materials and perform all labor required for the painting according to the plans and specifications prepared by Messrs. Holmes and Winslow, architects, and to their satisfaction and acceptance," and secondly to "the general conditions of the general contracts" between the owner and the principal contractor, Nelson Company, "so far as applicable to the work thus sublet." A clause in the subcontract, as we have already seen, tied these provisions of the general contract to the subcontract. Article II of the general contract contains this clause: "It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of said architects and that their decision as to the true construction and meaning of the drawings and specifications shall be final." Under the "general conditions" are these: "The plans and specifications intend to include everything requisite to the entire proper finishing of the work, whether every item involved is mentioned or not."

"All right is reserved to the architects to reject any material or workmanship not up to the plans and specifications, whether it be incorporated in the building or not. All such materials and workmanship must be promptly replaced by others in strict accordance with what is called for."

It is familiar law that where a building contract makes the architect an arbitrator between the parties to decide practical questions of performance that may arise during the progress of building, his decision, within the limits of the matters committed to him, is binding, so long as he does not act unreasonably, capriciously, arbitrarily, wilfully or fraudulently. *Norcross* v. *Wyman,* 187 Mass., 25; *Hebert* v. *Dewey,* 191 Mass., 403; *Handy* v. *Bliss,* 204 Mass., 513; *Evans* v. *Middlesex Co.,* 209 Mass., 474. The defendant seeks to apply that rule to the facts of this case, and to make final and conclusive the decision of the architect requiring the plaintiff to put on a coat of shellac at an expense equal to more than one-fifth of the entire contract price.

We do not think the law gives such autocratic power to an architect as that, for the reason that what he was requiring cannot fairly be construed as within the terms of the contract. The detailed specifications covering the painting are precise and clear. This woodwork was to be filled, stained and given a waxed finish, three distinct operations. Before the wax was to be applied two things and only two were to be done, the filling with what is known in the trade as a filler, and the staining. Each was a distinct process. Both these requirements were complied with, and there is no contention that that work was not properly done. At this stage, however, the architect discovered that these two processes had not produced a proper foundation upon which to apply the wax. It needed another coat such as shellac would give. But that was not the fault of the subcontractor. If it was the fault of anyone it was that of the architect himself in drawing the specifications. It may have been an error of judgment in thinking that the filling and staining would give sufficient body. In any event the plaintiff had done all he had agreed to do, and it was not within the legal power of the architect to compel this plaintiff to do this additional work. Nor can any of these general provisions create such a power. An architect may decide as to the performance or non-performance of work within the terms of a contract, but he cannot require the performance of additional work not within its terms. His non-acceptance of the work must be based upon the character and quality of the work specified and on which the contractor based his bids. He cannot rest it upon the non-performance of work not required by the contract, even though the completed job is not satisfactory. The lack of satisfaction in such

a case arises from the failure to insert that additional work in the contract and specifications. If the defendant's contention on this point is sound, then the specifications might call for one coat of paint upon woodwork and if the result prove unsatisfactory the architect could then compel the contractor to add one or two more coats in order to make it an acceptable job. Such a construction is unreasonable and unwarranted. It puts a power in the hands of the architect that was never intended and compels the performance of work that was never contracted for.

Had the architect in the case at bar desired a coat of shellac in addition to the filling and staining he should have so stated in the specifications. It is most significant that such a requirement was inserted in the original specifications for the treatment of the floors, viz: "Wood floors throughout to be stained, filled, then shellacked and then given two good coats of Berry Bros. liquid Granite." There was no necessity of such insertion if the architect had the power to require it without specification. We think it more reasonable to hold that when the use of shellac is contemplated in such a case, it should be specifically called for. Then the contractor can estimate its cost and include it in his bid.

For these reasons our conclusion is that this second claim be disallowed, and that the plaintiff is entitled to recover his lien claim of $494.13 less the cost of repainting, $327.95, a balance of $166.18, with interest from the date of the bill.

*Appeal sustained.*
*Bill sustained with costs.*
*Decree in accordance with*
*opinion.*