**M. DE MATTEO CONSTRUCTION CO.**

**v.**

**MAINE TURNPIKE AUTHORITY.**

**Civ. No. 5-46.**

United States District Court
D. Maine, S. D.
June 29, 1960.

Alton A. Lessard, Lewiston, Me., Herman Snyder, Richmond I. Bailen, Boston, Mass., for plaintiff.

H. Warren Paine, Vincent L. McKusick, Portland, Me., Edward F. Merrill, Skowhegan, Me., George D. Varney, Portsmouth, N. H., for defendant.

GIGNOUX, District Judge.

This matter comes before the Court upon defendant's motion for summary judgment in its favor upon the claim set forth in the original complaint and upon plaintiff's motion for summary judgment in its favor upon the additional claim set forth in an amendment to the complaint. Fed.R.Civ.P. 56, 28 U.S.C.A.

The action involves Contract No. 210, by which plaintiff agreed to perform the grading and drainage construction along a ten-mile stretch of the Maine Turnpike from near Mile 87 in the Town of Webster to near Mile 96 in the Town of Litchfield. In its complaint, which was filed May 11, 1957, plaintiff claims $1,087,900 damages for breach of contract, alleging that Howard, Needles, Tammen & Bergendoff,

the Engineer named in the Contract to supervise its performance, in violation of the Specifications, refused to let plaintiff use certain material removed in the course of excavation within the Turnpike right-of-way or available in immediately adjacent borrow pits in forming the embankment of the Turnpike, but rather required plaintiff to waste such material, even though suitable for such use under the Specifications, and to haul in its place substitute borrow from much greater distances—all at substantial extra cost to plaintiff. Defendant has set up certain defenses of law to this claim, which are the basis of its summary judgment motion.

In its amendment to the complaint, which was filed on November 27, 1959, plaintiff has added to its original claim a claim for a balance of $207,584.53, which has admittedly been earned under the Contract, but is being withheld by defendant as a "retent" until all claims, including the main claim involved in the instant action, have been settled. Plaintiff also claims interest on this amount from the date this action was instituted. Plaintiff's contention that this retent is past due and owing to it at this time is the basis of its summary judgment motion.

The Court will consider the two motions separately in the order of their filing.

### I. Defendant's Motion for Summary Judgment

A somewhat detailed recital of the allegations of the complaint and the relevant provisions of the Contract are essential to an understanding of the issues presented by defendant's motion for summary judgment.

Contract No. 210 was a unit-price contract, by which plaintiff was required, among other things, to do the necessary excavation and to haul, place and compact the materials required for embankments and roadbeds at unit prices bid by it. For every yard of earth which plaintiff took from the right-of-way and either placed in the roadbed and compacted or hauled outside the right-of-way and wasted, plaintiff was to be paid 48¢ per cubic yard; for every yard of earth which plaintiff was required to dig from borrow pits to be furnished by defendant outside the right-of-way, and which plaintiff hauled to and placed in the roadbed and compacted, plaintiff was to be paid 58¢ per cubic yard, plus an additional "overhaul" of 7¢ per cubic yard mile if plaintiff was required to haul more than certain minimum distances.

The Contract was executed in April, 1954, and its performance extended through the 1954 construction season and into 1955. The Final Estimate prepared by the Engineer on or about December 4, 1956 showed a total amount due plaintiff for its work under the Contract of approximately $2,100,000, all of which the parties have agreed has been paid to plaintiff except for the abovementioned balance or retent.

The Contract, which incorporates the Specifications, is voluminous, but plaintiff's claim is based primarily upon the provisions of Article 4X.2 of the Specifications, which specified the materials to be used in the embankment construction, and in substance called for Select Subbase [1] from the finished grade of the pavement down to a point generally three feet below, known as Template Grade. In the area from Template Grade down to twenty-five feet below finished grade, Article 4X.2 provided that the Contractor might use any stable material (except rock for the first two feet) which could be properly compacted by the methods and to the extent therein described.[2] The Contract also permitted

1. Select Subbase is defined in Article 4X.-2F as follows:

"Select Subbase shall consist of grandular material to be placed on embankment and in cuts above Template Grade and it may be composed of well graded sand, PRA Group A-3 soil, gravel, or any combination thereof such that one hundred per cent passes the four-inch sieve and not more than ten per cent passes the No. 200 mesh sieve."

2. Article 4X.3 specifies in detail methods of compaction, and the necessary degree of compaction.

the use of so-called "Random Materials", which were defined in Article 4X.2D as follows:

> "Random Materials shall be considered as a mixture in any reasonable proportion of any or all materials permitted to be used in the embankment, including the materials herein classified, in such quantities that it cannot be classified otherwise."

The complaint alleges that during the summer of 1954 there occurred an extraordinary and abnormal amount of rainfall, culminating in hurricanes in the latter part of the summer, and that as a result the materials to be used for the embankment became moist and presented problems of compaction. However, it is alleged as a matter of fact that the Random Materials intended for use by plaintiff were entirely capable of compaction in the manner and to the extent provided in the Specifications. Nevertheless, the complaint alleges, in violation of the Contract and the Specifications, the Engineer refused to permit the use of such Random Materials in the area between Template Grade and a horizontal plane twenty-five feet below the finished grade as specifically provided for in Article 4X.2, and instead, despite the protests of plaintiff, required plaintiff to furnish, haul, place and compact Select Subbase material in that area. It is charged that as a result, plaintiff was severely damaged by being forced to waste immediately available material and to excavate and haul material which could be obtained only at a considerable distance from the job and was therefore more expensive to it.

Defendant's motion for summary judgment raises two principal defenses of law, which are independent defenses and either of which, defendant contends, entitles it to judgment in its favor as a matter of law upon plaintiff's claim for breach of contract. Briefly stated, defendant's first defense is that the decision of the Engineer as to the suitability of the Random Materials offered for use by plaintiff was a factual determination upon a question which the parties had by their contract committed to the Engineer, and as to which under the law of the State of Maine, which both parties concede to be applicable here, the Engineer's determination was final and binding upon the parties. Defendant's second defense is that, even if the Engineer's determination were not binding, the work for which plaintiff now seeks extra compensation was either "Work" within the Contract for which the unit prices, which plaintiff admittedly has received, were its full compensation, or it was "Extra Work" as defined in the Contract, for which plaintiff has waived any claim to extra compensation because of its admitted failure to comply with the "Extra Work" provisions of the Contract.

In support of its first defense of law defendant relies principally upon the specific provision in Article 4X.2 of the Specifications which reads as follows:

> "The suitability of materials with respect to classification, stability and compactibility will be determined by the Engineer."

Defendant also relies upon the first paragraph of Article 1.30 of the Specifications which deals generally with the authority of the Engineer:

> "The work shall be done under the supervision of the Engineer to the fulfillment of the Contract requirements. The Engineer shall decide any and all questions which may arise as to the quality or acceptability of materials furnished and work performed, and as to the manner of performance and rate of progress of the work. He shall decide all questions which may arise as to the interpretation of the Plans and Specifications, and all questions as to the satisfactory and acceptable fulfillment of the terms of the Contract on the part of the Contractor. The Engineer shall determine the amount and quantity of the several kinds of work performed and materials furnished under the Contract and his decision shall be final. The

Engineer is not authorized to increase the obligation of the Authority to the Contractor, except as specifically set forth in the Specifications."

Upon the basis of the above-quoted language from Article 4X.2 and Article 1.30,[3] defendant argues that the decision of the Engineer as to the unsuitability of the Random Materials offered by plaintiff was made pursuant to the authority expressly granted to the Engineer by the parties to the Contract and is final and absolutely binding upon plaintiff in this action.

Plaintiff meets defendant's first defense of law by arguing first of all that a reading of the entire Contract indicates clearly that the decisions of the Engineer with respect to suitability of materials were in no sense intended to be final. In this respect, plaintiff points first to the following provision of Article 1.30, which follows immediately after the above-quoted paragraph:

> "The decision of the Authority shall control in the final interpretation of the Contract. If the Contractor considers himself aggrieved by such an interpreting decision, he may require the dispute to be finally and conclusively settled by the decision of arbitrators, the Authority and the Contractor each choosing one out of three persons to be named by the other and a third being selected by the two so chosen. By the decision of these arbitrators, or by that of the majority of them, both parties of this agreement shall be finally bound."

Plaintiff argues from the foregoing that since defendant was given final authority to interpret the Contract, subject to arbitration,[4] a decision of the Engineer cannot be final under any circumstances. But the Court cannot agree that the Engineer, in making a determination of unsuitability of materials offered by plaintiff, was interpreting the Contract in any sense of the word. If the Engineer in fact made a determination that a particular quantity of material did not conform to the standards of stability and compactibility set forth in Article 4X.2, no question of interpretation of the Contract was involved.

Plaintiff next points to the fact that the language from the first paragraph of Article 1.30, set out above, upon which defendant relies, gives finality in terms to the decisions of the Engineer with respect to the amount and quantity of work performed and materials furnished, but leaves out the words "and his decision shall be final" with respect to the Engineer's determinations as to the quality or acceptability of materials and work. From this omission, plaintiff urges that, by negative implication, the Engineer's decisions as to quality and acceptibility were not to be final.

The difficulty with this argument is that it does not take into account the well-recognized canon of construction that the specific controls the general. Since Article 4X.2 deals specifically with the suitability of materials with respect to their classification, stability and compactibility under the standards prescribed in that Article, the Court must primarily rely upon the proper interpretation of the language of Article 4X.-2. Although Article 4X.2 does not contain express language of finality either, the authority therein given to the Engineer to make determinations as to suitability of materials would be meaningless if it were not final. In construc-

3. Defendant also cites in support of its position the following language from Article 1.3 of the Specifications:
"In order to avoid cumbersome and confusing repetition of expression in the Specifications, whenever it is provided that anything is, or is to be done, if, or as, or when, or where, * * * 'suitable', 'unsuitable', * * * it should be taken to mean and intended * * * 'suitable', 'unsuitable', * * * by or to the Engineer * * *."

4. The amended complaint alleges, and the amended answer admits, that arbitration of the present controversy was requested by plaintiff on September 21, 1956, and rejected by defendant on January 14, 1957.

tion contracts of this magnitude someone has to be given authority in the field to make decisions such as the one here involved in order to prevent work stoppages over disputes. The necessity of giving the Engineer final authority in this area is also readily apparent when it is realized that otherwise a tribunal, such as this Court, would have to decide years later, when the material was long since scattered and likely underground, whether it was stable and compactible at the particular time in issue. Recognizing that the Contract should be construed as a whole so as to give meaning to every provision, and also that ambiguities should be resolved against the party (the defendant) who drafted the instrument, the Court must nevertheless hold that the Engineer here was not only to make the determinations as to the suitability of materials, but that such determinations by the Engineer were to be final.

The Maine court has recognized the pertinency of these observations in a long series of cases. Hanscom v. North Anson Mfg. Co., 1921, 120 Me. 220, 113 A. 179; Burton v. Mayo, 1909, 106 Me. 195, 76 A. 486; Bailey v. Blanchard, 1873, 62 Me. 168; Berry v. Reed, 1866, 53 Me. 487; Robinson v. Fiske, 1845, 25 Me. 401. These cases involve the appointment of a surveyor by the parties to a logging contract to determine the quantity and quality of logs delivered under the contract. They point out that the only object of having such a survey made is to determine finally and conclusively the factual questions involved, and they stand for the proposition that the findings of the surveyor are binding on both parties in the absence of fraud or mathematical mistake. The Maine law is thus summarized in the Bailey case (62 Me. at page 174):

> "The position that * * * [the surveyor's] scale should be set aside upon evidence of error in count or estimate * * * cannot be maintained. He was the scaler agreed upon by the parties. *Mere mistakes of his are not to be revised here upon the strength of testimony equally liable to mistake.* So far as he went under the contract, his doings are conclusive upon the parties in the absence of fraud." (Emphasis added.)

In the Bailey, Berry and Robinson cases, there appear to have been no words of finality in the contract, and yet evidence to impeach the surveyor's findings as erroneous was held inadmissible on the ground that his findings were conclusive upon the parties. In the Berry case, the court stated (53 Me. at page 491):

> "It is conceded that Palmer, who surveyed the logs and made out his survey bills indicating the quality of each of the particular qualities, was agreed upon by the parties to perform this service. *What was the use or object of such an agreement, unless his decision, in the absence of fraud, was to bind the parties?*" (Emphasis added.)

So here, the Court must ask: What possible use or object could there be for the agreement in Article 4X.2 of the present Contract that the Engineer should determine the "suitability of materials with respect to classification, stability and compactibility" "unless his decision, in the absence of fraud, was to bind the parties?" As the Maine court further noted in the Berry case (53 Me. at page 491):

> "The word 'survey' means something more in the language of the lumber trade than a mere view and measurement. It includes a determination of the quality as well as the quantity of the timber or lumber surveyed; plainly not a conclusive determination, *unless the parties agree upon the individual* who shall make it; *but when they do thus agree,* in the absence of fraud and of stipulations to the contrary, *it must be understood to mean that the judgment of the individual agreed upon shall bind the parties as to those matters embraced in the survey.*" (Emphasis added.)

The Maine court has also recognized the binding effect of the determinations

of an engineer to whom the parties have committed decisions with respect to quality or sufficiency of materials in a construction contract. Kerr v. State of Maine, 1928, 127 Me. 142, 142 A. 197. And in Jacques v. Otto Nelson Company, 1920, 119 Me. 388, 111 A. 515, the court thus summarized the law with respect to the conclusive effect of a similar provision with respect to decisions of an architect under a building contract (119 Me. at page 392, 111 A. at page 516):

> "It is familiar law that where a building contract makes the architect an arbitrator between the parties to decide practical questions of performance that may arise during the progress of building, his decision, within the limits of the matters committed to him, is binding so long as he does not act unreasonably, capriciously, arbitrarily, wilfully or fraudulently."

The law in Maine appears to be the same as the law elsewhere. 3 Corbin on Contracts § 652 (1951).

In concluding that the Engineer's factual determination as to the suitability of materials under this Contract is final and binding upon the parties under normal circumstances, the Court has taken due account of plaintiff's argument that the Engineer was not actually appointed by the parties, but was employed by the defendant in the first instance and was thrust upon plaintiff, which had no real choice in the matter. This argument is wholly lacking in merit. The Engineer was agreed upon as arbiter by two large corporations, which were free in law to do what they wished. That an engineer may act in other respects as the agent of one party and may be employed by one party does not of itself disqualify him from acting as an independent arbiter or umpire if the parties so agree. See United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256; Southern New England R. Corp. v. Marsch, 1 Cir., 1931, 45 F.2d 766; Kerr v. State of Maine, 1928, 127 Me. 142, 142 A. 197; 3 Corbin on Contracts § 652 (1951).

Plaintiff's second basic argument in opposition to defendant's first defense of law is based upon the provisions of Article 7.2 of the Specifications, which reads as follows:

> "Materials in Borrow pits will be provided by the Authority at no cost to the Contractor.
>
> "The suitability of materials from borrow with respect to classification for various purposes will be determined by the Engineer *in accordance with Article 4X.2 hereof* and the Contractor shall make use of these various materials in accordance with the directions of the Engineer." (Emphasis supplied.).

Plaintiff's position is that under the allegations of its complaint it should be permitted to show that the Engineer did not in fact make any determination as to the suitability of the materials offered by plaintiff, but rather disregarded entirely its power and duty to do so and summarily ordered plaintiff to use Select Subbase, even though the Random Materials offered by plaintiff met the standards of stability and compactibility prescribed in Article 4X.2.

A summary judgment under Fed.R.Civ.P. 56 may be entered if, but only if, the pleadings, depositions, admissions and affidavits, if any, on file show that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment he seeks as a matter of law. Fed.R.Civ.P. 56(c). And it is well settled that to warrant entry of summary judgment for a defendant, the facts alleged or admitted by the plaintiff should disclose defendant's right to a judgment "with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances." Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213, 216. See also, e. g., Landy v. Silverman, 1 Cir., 1951, 189 F.2d 80; Peckham v. Ronrico Corp., 1 Cir., 1948, 171 F.2d 653. So tested, defendant's first defense of law, in the posture presented by this

summary judgment motion, must fail for the following reason.

The rule of finality as set forth in the Maine logging and building contract cases admits of one extremely important exception, other than those involving fraud or mathematical mistake. Thus in Burton v. Mayo, 1909, 106 Me. 195, at pages 198–199, 76 A. 486, at page 488, the Maine court stated:

> "The case of Chase v. Bradley, 17 Maine, 89, cited by the defendant, is clearly distinguishable from the case at bar. In that case it was agreed that the timber should be scaled according to the usual Kennebec survey by a person to be appointed, etc. This provision clearly had reference to a special method as definite as that of a specified kind of a scaler's rule. For instance, it is a matter of common knowledge that the method employed at one time in the Kennebec survey was so widely at variance with that which prevailed in the Penobscot survey that the difference in the results of the two scales was nearly 25 per cent. In such a case it would be obviously unjust to permit a scaler to adopt the Penobscot survey, instead of the Kennebec in violation of the express stipulation in the agreement of the parties."

Similarly, it was said in Bailey v. Blanchard, 1873, 62 Me. 168, 174:

> "*So far as he went under the contract*, his doings are conclusive upon the parties in the absence of fraud." (Emphasis supplied.)

And in Kerr v. State of Maine, 1928, 127 Me. 142, at pages 145–146, 142 A. 197, at page 199, the court stated:

> "The law writes into a provision of such nature that the engineer must exercise his honest, judgment."

These statements are in accord with the generally recognized principle that an arbiter may exercise only those powers given him in the contract and must exercise them according to the ground rules set forth in the contract, and if he does not follow those ground rules or if he exercises powers other than those given him, his decision is binding on no one. See Todd Dry Dock Engineering & Repair Corp. v. New York, 2 Cir., 1931, 54 F.2d 490, 492; Southern New England R. Corp. v. Marsch, 1 Cir., 1931, 45 F.2d 766; Thomas & Driscoll v. United States, 1896, 32 Ct.Cl. 41, 62; Jacques v. Otto Nelson Company, 1920, 119 Me. 388, 111 A. 515; 3 Corbin on Contracts § 652 (1951). An arbiter's decision must be within "his sphere of competence." See Mange v. Unicorn Press, Inc., D.C.S.D.N.Y.1955, 129 F. Supp. 727, 729.

Defendant argues that whether or not the Engineer disregarded the Specifications in the present case is immaterial because the Engineer also had a power under Article 1.64 [5] to alter the Specifications, and such a power would sustain its action here. Assuming doubtfully that it did have a power which would allow it to order plaintiff to use Select Subbase even though this allegedly increased plaintiff's expenses by over a million dollars, see United States v. McMullen, 1912, 222 U.S. 460, 472, 32 S. Ct. 128, 56 L.Ed. 269; Bates & Rogers Constr. Co. v. Board of Commissioners, D.C.N.D.Ohio 1920, 274 F. 659, 666, there is no suggestion in this record that the Engineer purported to do so. See Todd Dry Dock Engineering & Repair Corp. v. New York, supra.

The application of these principles to the present case compels the conclusion that defendant's motion for summary judgment cannot be sustained upon the basis of its first defense. As has been previously indicated, the Court agrees

5. "Subject to the provisions of Article 1.30 entitled 'Authority of Engineer', the Engineer shall have the power, not only to alter the Plans and Specifications and to vary, increase and diminish the character, quantity and quality of, or to countermand, any Work now or hereafter required but also to require the performance of Extra Work. * * *" The "Extra Work" provisions are discussed below.

that if the Engineer made a factual determination that the Random Materials offered by plaintiff were unsuitable because not stable or not compactible by the methods and to the extent prescribed in the Specifications, its decision, even though erroneous, was final and conclusive, and defendant has a complete defense to this action. But if the Engineer exceeded the powers given it in the Contract or disregarded the ground rules specified in the Contract, its decision was not final and could not be binding and conclusive upon the parties in this action. Under the law of the State of Maine, which this Court must apply, plaintiff will be entitled at the trial to prove, if it can, such a state of facts in support of the claim for breach of contract asserted by it in its complaint. The factual issue thus tendered cannot be determined by the Court upon this motion for summary judgment.

Defendant's second defense of law, which it asserts as an alternative basis for the granting of its summary judgment motion, is that, even if the Engineer improperly ordered plaintiff to do work which it was not required to do under the Contract, the work for which plaintiff now seeks extra compensation was either "Work" within the Contract, for which the unit prices were its full compensation, or it was "Extra Work" as defined in the Contract, for which plaintiff has waived any claim to extra compensation because of its failure to comply with the "Extra Work" provisions of the Contract. Moreover, defendant argues, under Article 1.30 of the Specifications, the Engineer had no authority in any event to increase the obligation of defendant.

In support of its second defense, defendant points first to the fact that Contract No. 210 was a unit-price contract, by which the parties agreed that a certain sum of money per unit of work was the exclusive compensation which the Contractor was to receive for work done under the Contract. Thus the Proposal, which is incorporated as part of the Contract, provides in pertinent part:

> "The undersigned hereby declare * * * that they will contract to carry out and complete the work as specified and delineated at the price per unit of measure for each scheduled item of work stated in the Schedule of Prices following."

And Article 1.67 of the Specifications provides in pertinent part:

> "The Contractor shall accept the compensation as provided in the Contract in full payment for furnishing all materials, labor, tools, equipment, and other costs including all taxes, unless otherwise provided for; and for performing all Work contemplated and embraced under the Contract; * * *"

Defendant's principal contention is that the work here involved was "Work", which as used in the Contract is a term of art, and is defined in Article 1.3 as follows:

> "Work: All structures, equipment, plant, labor, materials and other facilities and all other things necessary or proper for or incidental to the construction and/or things shown on the Plans and/or required by the Specifications or involved in carrying out their intent."

Since plaintiff has admittedly received payment (with the exception of the retent) in accordance with the Schedule of Prices for all Work done by it under the Contract, and the work here involved was included at its unit prices, defendant argues that under the above-quoted Contract provisions, plaintiff has received the agreed compensation for such work.[6]

6. As defendant points out, the fact that the Engineer would not let plaintiff use the materials it had at or adjacent to the job, but rather required plaintiff to excavate and haul materials from distant borrow pits increased the quantity of certain of the more expensive items of "Work", particularly "Borrow" and "Overhaul", and thus the total cost to defendant. That plaintiff has received more money under the Contract than it would have if it had been allowed to use the materials it wanted to use would, of course, mitigate any damages plaintiff might be entitled to recover in this action.

On the other hand, defendant continues, if plaintiff was required by the Engineer to do work not within the Contract and not provided for in the Schedule of Prices, then the work was necessarily "Extra Work", which is also a term of art, and is defined in Article 1.3 as follows:

> "Extra Work: Any work required by the Engineer which in his judgment is *in addition to* that required by the Plans and Specifications when the Contract was awarded *and differs in character* from the items of Work contained in the Schedule of Prices of the Proposal." (Emphasis supplied.)

Because plaintiff admittedly did not take any of the steps required by the Contract to obtain payment for Extra Work, defendant argues that plaintiff is now barred from receiving extra compensation therefor.[7]

In short, defendant's position is that the Engineer's order here required plaintiff to perform either "Work", as defined in the Contract, for which the unit prices were plaintiff's sole compensation, or "Extra Work", as also defined in the Contract, for which plaintiff has waived compensation by not taking the required steps. The terms "Work" and "Extra Work" are, defendant argues, mutually exclusive and all-inclusive. Defendant thus attempts to impale plaintiff on the horns of a dilemma.

One horn is quickly disposed of. The parties agree, as is indeed apparent from its definition, that the work required of plaintiff was not "Extra Work". The Contract definition of "Extra Work" embraces only work required by the Engineer which in his judgment is not only "in addition to" that required by the Plans and Specifications, but also "differs in character" from the items of Work contained in the Schedule of Prices. While it is clear that if plaintiff's claim is correct, the work required of it was "in addition to" that required by the Plans and Specifications, both parties agree that it was not work which "differs in character" from the items of Work contained in the Schedule of Prices.[8] Defendant may complain bitterly of the loss of protection of the salutary[9] "Extra Work" provisions in the Contract, but it simply drew the definition of "Extra Work" too narrowly.

Defendant argues strenuously nevertheless that the work here involved falls within the Contract definition of "Work", for which plaintiff agreed to accept the unit prices in full payment. The Court, however, cannot agree. The only portion of plaintiff's claim which survives defendant's first defense is that plaintiff is entitled to damages for work it was required by the Engineer to do in violation of the Contract and the Specifications. No reasonable construction of

7. Article 1.65 and Article 1.66 of the Specifications provided, in substance, that the Contractor could obtain compensation for Extra Work only if: (1) it had a written Extra Work Order approved in writing by the Authority; or (2) it had complied with the specific requirements of the Contract requiring written notice to the Authority, within forty-eight hours, and the furnishing of time slips and memoranda showing the extra costs involved. Article 1.66 recited that the purpose of these provisions was to afford the Authority the opportunity of verifying the Contractor's claim at the time, to cancel promptly any such order if it so wished, and to afford the Engineer the opportunity of keeping an accurate record of the costs involved. Article 1.66 also expressly provided that the failure of the Contractor to furnish such notice, time slips and memoranda "* * * shall be deemed to be a conclusive and binding determination on his part that the direction, order or requirement of the Engineer does not involve the performance of Extra Work, and shall be deemed to be a waiver by the Contractor of all claims for additional compensation or damages by reason thereof."

8. The Schedule of Prices included the items "Borrow" and "Overhaul", which as defined in the Contract embraced excavation in borrow pits and hauling from borrow pits to the Turnpike right-of-way—work of the character for which plaintiff seeks to recover damages.

9. See 9 Am.Jur. Building and Construction Contracts § 21; 43 Am.Jur. Public Works and Contracts §§ 117, 118.

the Contract provisions upon which defendant relies justifies the conclusion that plaintiff agreed to accept the unit prices for work it was required to do entirely outside of the Contract and in violation thereof. Thus, the Contract definition of "Work" embraces only the items therein mentioned insofar as they are "necessary or proper for or incidental to the construction and/or things *shown on the Plans and/or required by the Specifications* or involved in carrying out their intent." (Emphasis supplied.) Similarly, in the above-quoted portion of the Proposal, plaintiff agreed to accept the unit prices for the work "as specified and delineated," and in Article 1.67 of the Specifications, also set out above, plaintiff agreed to accept the compensation provided in the Contract in full payment "for performing all Work contemplated and embraced under the Contract." While the first clause of Article 1.67 provides that the Contractor shall accept the compensation provided in the Contract in full payment "for furnishing all * * * labor", this clause cannot be read *in vacuo*. It must be made to fit with the other provisions of the Contract, and this can only be done if it is interpreted as including only labor contemplated and embraced under the Contract. Any ambiguity, of course, must be resolved against defendant, who drafted the Contract. Bar Harbor & Union River Power Co. v. Foundation Co., 1930, 129 Me. 81, 85, 149 A. 801.

The Court must therefore conclude that insofar as the Engineer ordered plaintiff to do work not required by the Specifications, such work did not fall within the Contract definition of "Work", and plaintiff did not agree to accept the unit prices.

As a final argument, which defendant conceives to be part of its second defense, defendant points to the clear language of Article 1.30 of the Specifications which provides:

> "The Engineer is not authorized to increase the obligation of the Authority to the Contractor, except as specifically set forth in these Specifications." [10]

In this defense, defendant apparently misconceives the theory of plaintiff's cause of action as set forth in the complaint. Insofar as it survives defendant's first defense, it is a claim for breach of contract resulting from action of the Engineer in violation of the Specifications. Upon first principles, it is based upon an alleged breach of defendant's implied promise to permit plaintiff to complete the work according to the Specifications without interference from defendant or its representatives. See United States v. Barlow, 1902, 184 U.S. 123, 22 S.Ct. 468, 46 L.Ed. 463; United States v. Smith, 1876, 94 U.S. 214, 24 L.Ed. 115; Bay City v. Frazier, 6 Cir., 1935, 77 F.2d 570, 572; Ryder Building Co. v. Albany, 1919, 187 App.Div. 868, 176 N.Y.S. 456. Cf. Kerr v. State of Maine, 1928, 127 Me. 142, 142 A. 197. See Restatement, Contracts § 315 (1932). It is supported by a long line of cases, the leading one being Borough Constr. Co. v. New York, 1910, 200 N.Y. 149, 93 N.E. 480, which hold that when the person in charge of construction work for the owner orders the contractor to do something above and beyond that which is required of it in the contract, the contractor may under protest do the work ordered and sue the owner for reasonable compensation for the work.[11] City and County of San Francisco v. Transbay Constr. Co., 9 Cir., 134 F.2d 468, certiorari denied, 1943, 320 U.S. 749, 64 S.Ct. 52, 88 L.Ed. 445 (applying California law); Bay City v. Frazier, supra; Todd Dry Dock Engineering & Repair Corp. v. New York, 2 Cir., 1931, 54 F.2d 490 (L. Hand, J., applying New York law); American Pipe & Constr. Co. v. Westchester County, 2 Cir., 1923, 292 F. 941, 955; Byson v. Los Angeles, 1957, 149 Cal.App.2d 469, 308 P.2d 765; Borough Constr. Co. v. New York, supra; Gearty v. New York, 1902, 171 N.Y. 61, 63 N.E. 804; Heating Mainte-

10. The exception in evidently a reference to the "Extra Work" provisions of the Contract.

11. The order must be arguably pursuant to the contract. Borough Constr. Co. v. New York, supra.

nance Corp. v. New York, Ct.Cl.1954, 206 Misc. 605, 134 N.Y.S.2d 71; Lentilhon v. New York, 1905, 102 App.Div. 548, 92 N.Y.S. 897, affirmed per curiam, 1906, 185 N.Y. 549, 77 N.E. 1190; 17 C.J.S. Contracts § 510. See Callahan Constr. Co. v. United States, 1940, 91 Ct.Cl. 538, 635; Thomas & Driscoll v. United States, 1896, 32 Ct.Cl. 41, 62. Compare 17 C.J.S. Contracts § 371. In San Francisco v. Transbay Constr. Co., supra, the Court of Appeals for the Ninth Circuit thus explained the principle involved (134 F.2d at page 473):

> "The doctrine of these cases is that a contractor who is ordered by representatives of a municipality to furnish materials or do work which the former believes are not called for by his contract, may under protest do as directed and subsequently recover damages if he is able to show that the requirement imposed on him was not fairly within his contract. (Footnote omitted.) Under such circumstances the contractor may treat the insistence of the municipality as a breach and recover damages based upon the reasonable value of the extra work or materials. These cases are not authority for the proposition that if the contractor chooses to continue, the contract is to be regarded as rescinded or abrogated. The recovery in quantum meruit goes only to the work performed in excess of that called for by the agreement. *These decisions represent an enlightened development of the law of contracts.*" (Emphasis supplied.) [12]

While it is perfectly clear, as defendant points out, that Article 1.30 limited the authority of the Engineer, as defendant's agent, to change the basic contractual arrangements, plaintiff's claim is not based upon purported modification of the Contract by the Engineer, but, in accordance with the above principles, is based upon an alleged breach of the Contract by the Engineer. Compare Leventhal v. Lazarovitch, 1928, 127 Me. 222, 142 A. 781. And no reasonable interpretation of the language from Article 1.30 upon which defendant relies permits a construction which would give it the effect of insulating defendant from liability for damages for breach of contract, even though occasioned by action of the Engineer, rather than by action of defendant itself. The entire tenor of the Contract indicates that in the supervision of its performance the Engineer was to act throughout as the representative of defendant. City of Wheeling v. John F. Casey Co., 4 Cir., 74 F.2d 794, 795–796, certiorari denied, 1935, 296 U.S. 593, 56 S.Ct. 106, 80 L.Ed. 420. Thus, the Engineer prepared the Plans and Specifications for defendant, and the Engineer was paid by defendant. And the first sentence of Article 1.30, the very article upon which defendant relies, provides:

> "The work shall be done under the supervision of the Engineer to the fulfillment of the Contract requirements."

12. One court has said that this doctrine definitely does not rest in quantum meruit. Todd Dry Dock Engineering & Repair Corp. v. New York, supra. Another court has implied that it does. San Francisco v. Transbay Constr. Co., supra. See also Lentilhon v. New York, supra. The courts in these cases all insist, however, that the action is for breach of contract, apparently of the implied promise not to hinder the contractor's performance. See Bay City v. Frazier, supra; American Pipe & Constr. Co. v. Westchester County, supra.

In Kerr v. State of Maine, supra, the Maine court recognizes that hindrance of performance may result in breach of contract (127 Me. at page 149, 142 A. at page 201) as well as the doctrine that "unreasonable superintendence" may give rise to liability (127 Me. at page 148, 142 A. 197). Compare United States v. Barlow, supra ("unwarrantable superintendence"). See also Dionne v. West Paris Building Association, 1927, 126 Me. 454, 139 A. 497; Libby v. Deake, 1903, 97 Me. 377, 54 A. 856; 17 C.J.S. Contracts § 371(d). The Maine court thus seems to have implicitly recognized the Borough Contruction doctrine.

Furthermore, personal liability of the Engineer is expressly negatived by Article 1.53 of the Specifications, which provides:

"In carrying out the provisions of this Contract or in exercising any power or authority granted them by their position there shall be no liability upon the members of the Authority, the Engineer, or their authorized representatives or assistants, either personally or as officials of the Authority, it being understood that in such matters *they act as agents and representatives of the Authority.*" (Emphasis supplied.)

The only conclusion to be drawn from a reading of the entire Contract is that, while the Engineer had no authority to bind defendant by modifications of the Contract, there was no intention to absolve defendant from liability for acts of the Engineer in supervising performance of the Contract, a function which defendant expressly delegated to the Engineer.

For the foregoing reasons, defendant's motion for summary judgment must be denied.

II. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment in its favor upon the claim set forth in the amendment to the complaint must also be denied.

By its motion, plaintiff seeks the Court's judgment directing immediate payment to it by defendant of the balance or retent of $207,584.53, admittedly earned by it and remaining unpaid under the Contract, together with interest thereon from the date this action was instituted.

Article 1.69 of the Contract explicitly provides, among other things, that before the Contractor is entitled to final payment under the Contract, the Contractor shall furnish to the Authority a sworn affidavit to the effect that all bills for salaries and wages due or for materials furnished have been paid. The record presently before this Court contains no allegation or admission that plaintiff has furnished such an affidavit, which is clearly a condition precedent to plaintiff's right to receive payment, both of the principal amount of the retent and of the interest thereon which it now seeks. Although the incompleteness of the record in this respect may have been an oversight by counsel, an issue as to a material fact is presented, which the Court cannot resolve upon this motion. Fed.R.Civ.P. 56(c).

In accordance with the foregoing opinion, defendant's motion for summary judgment in its favor upon the claim set forth in the complaint, and plaintiff's motion for summary judgment in its favor upon the claim set forth in the amendment to the complaint, are both hereby denied.