**Clarence MANGE, Plaintiff,**
v.
**UNICORN PRESS, Inc., Defendant.**

United States District Court,
S. D. New York.

April 7, 1955.

Gilbert H. Weil, New York City, for plaintiff, Alfred T. Lee, Brooklyn, N. Y., of counsel.

Marcus Miller, New York City, for defendant.

IRVING R. KAUFMAN, District Judge.

Defendant seeks summary judgment in an action for breach of contract. To stimulate sales of its New Funk & Wagnalls Encyclopedia (hereafter the Encyclopedia), the defendant initiated a Puzzle-Quiz contest in 1950. With each volume of the Encyclopedia, one Puzzle-Quiz consisting of several rebus type puzzles and several quizzes pertinent to the contents of that volume were sent to contestants. All parties agreed to be bound by the Official Rules of the contest. Rule 3 stated that each question or puzzle would have only one correct answer or solution, each earning contestant a designated number of points. Those tied with the greatest number of points would be entitled to compete in tie-breaking puzzles. Rule 5 established the Encyclopedia as "the final and deciding authority on all quizzes contained in the puzzle quizzes" and stated that "Facts not found in the Encyclopedia will not be recognized as the correct answers to the quiz questions." Rule 9 stated that "the contestant * * * agrees * * * that the decision of the Publishers shall be final and conclusive in all matters concerning the conduct of the contest, the judging of answers and solutions to Puzzle Quizzes * * *, the making of awards, * * * and the measures invoked to insure individual effort and equal opportunity in fairness to all contestants." However, in an issue of the Contest News sent to all contestants, the judges' job was described as "merely a matter of tallying."

Plaintiff's complaint deals with Puzzle-Quiz No. 16B in which the contestants were required to check "correct statements" about the giraffe. One sentence in the puzzle sheet sent to plaintiff read: "It is timid and, having no vocal chords, is mute." This form was sent to 75,000 contestants, but in a later printing, sent to 200,000 others, the word "chords" was spelled "cords". In the "controlling" Encyclopedia the identical sentence appears but the word is spelled "cords". Plaintiff contends that because of this spelling variance he did not check the statement as correct. He affirms that he found this spelling variance to be a critical problem; i. e. he was unsure of whether it was a typographical error or a deliberate substitution of an incorrect phrase and, unable to find the spelling "chords" used in an anatomical sense any place else in the Encyclopedia, he chose the latter interpretation. He contends that he was guided in this choice by Rule 3 which states that there is only one correct answer to each quiz and by a statement in defendant's "Guide for Answering Quizzes and Solving Puzzles" which warned: "always read and reread the quiz-questions very carefully. If you grow careless in reading them and overlook the exact meaning, you may make a foolish mistake." He also claims that he thought there was a difference between being asked if the statement was "correct" or "true".

Plaintiff urges that in marking his answer wrong, defendant violated Contest Rule 5 making the Encyclopedia the controlling authority and hence breached its contract; and further, that in sending him a puzzle with a variant spelling of a key word, defendant gave him a more difficult question than that posed to other contestants in violation of its agreement to give equal treatment to all. Had plaintiff not been marked wrong with respect to Puzzle 16B he would have been eligible to enter the tie-breaking stages of the contest as all his other answers to the 36 Puzzle-Quizzes were correct.

Defendant bases its request for summary judgment on the theory that, absent an allegation of fraud or gross mistake, the decision of the Publishers against plaintiff was made final and conclusive by Rule 9.

The rule that the decisions of an arbiter chosen by the contracting parties are binding in the absence of fraud, does not seem to have application where

he attempts to make a decision outside of his sphere of competence. See, e. g. Dock Contractor Co. v. City of New York, 2 Cir., 1924, 296 F. 377; Borough Construction Co. v. City of New York, 1910, 200 N.Y. 149, 150–152, 93 N.E. 480. In Minton v. F. G. Smith Piano Co., 1911, 36 App.D.C. 137, 33 L.R.A.,N.S., 305, it was held that the powers of the contest judges were to be determined from the terms of the published offer and rules governing the contest and that any ambiguities were to be resolved against the offeror-defendant. There was some ambiguity as to whether legibility and neatness of answers counted. The court found that the rules limited the judges to deciding only the correctness of the answers and held for plaintiff despite the fact that no fraud had been alleged.

Defendant relies upon several contest cases decided in this District to support its contention that fraud must be alleged. However, these were situations where the plaintiff failed to allege or to prove that the judges had violated the contest rules. In Wassyng v. Disabled American Veterans, D.C.S.D.N.Y.1950, 92 F.Supp. 275 [1] and in Furgiele v. Disabled American Veterans, D.C.S.D.N.Y.1952, 116 F. Supp. 375, affirmed Per Curiam, 2 Cir., 1953, 207 F.2d 957, although the plaintiff contended that the defendant had failed to judge in accordance with the rules, the affidavits showed instead that the words chosen by the defendant were to be found in the controlling dictionary. In Baez v. Disabled American Veterans, D.C.S.D.N.Y.1952, 13 F.R.D. 330, plaintiff asserted that the judges had improperly allowed the use of foreign and proper names in violation of the rules, and, both sides having presented affidavits of experts as to whether or not the words involved were foreign, the court denied summary judgment, finding this to be a triable issue of fact. The situation in the instant case calls even more forcefully for a full trial. Defendant cites only outside sources to support the Publishers' decision that the words "chords" and "cords" are used interchangeably even in the anatomical sense, and asserts that the Encyclopedia was intended to be only the factual authority, not the lexicographical source.[2]

At this stage of the litigation, the Court cannot peremptorily hold that a decision of the Publishers under Rule 9 was clearly intended to be conclusive on the issue here presented, particularly in view of: (1) the language of Rule 5, rendering the Encyclopedia "the final and deciding authority on all quizzes", which appears *prima facie* to be inconsistent with plenary power in the Publishers; (2) other language in the contest rules and in a publication distributed in connection with the contest which seem to imply that the Publisher's powers in this regard were intended to be merely of a ministerial nature;[3] and (3)

---

1. Although the language of the opinion in Wassyng appears inconsistent with the rule that a breach of one of the contest rules is actionable without fraud even though the rules contain a finality clause, the plaintiff there disagreed with the contest judges' decision that his solution was not an English word, as required by the rules, despite the fact that the dictionary controlling under the rules designated it as a foreign word ["(Heb.)"] Since no violation of the contest rules was found, the fraud rule was properly followed.

2. Defendant also urges that Rule 9 gave the judges discretion to act in just such unforeseen circumstances and that had they marked plaintiff's answer right, they would have violated the rule calling for a single correct answer. However, the judges did have another alternative; they could have eliminated this question because of ambiguity as they did in several other instances.

3. Rule 3 states, in part: "this is a contest based only on point scores and not on * * * the whim of judges."

In defendant's publication for contestants entitled "The Contest News", Vol. 1, issue 13, the following appears:

" 'Judging' Solutions is Only a
A Matter of Checking Them

"There is Only One Correct Solution or Answer for Each Puzzle or Quiz Question. No Room for Doubt!

"When the time comes to 'judge' the solutions and answers you submitted in the

the policy expressed in Minton v. F. G. Smith Piano Co., supra, 36 App.D.C. at page 147, of resolving ambiguities against the publisher-offeror.

"It is enough to notice that there is a substantial doubt about that and such an involved question is so bound up with the particular facts and circumstances that it is better first to let them be fully developed at a trial and findings made after that has been done." Foundry Services, Inc., v. Beneflux Corporation, 2 Cir., 1953, 206 F.2d 214, 216.

Defendant's final contention is that any award of damages would be merely speculative. It points out that 23,548 contestants entered the tie-breaking stages and that only 210 prizes were awarded, first prize being $307,500. Of course, the number of tie-breaking contestants might be different if plaintiff's contentions as to the proper solution to Puzzle 16B are fully accepted, but the number of contestants would still undoubtedly be in the thousands. Defendant relies on a series of New York cases not involving contests, and a series of out-state cases involving contests to support its contention that such speculative damages cannot be the basis for an award. It is unnecessary to reach the merits of the question whether plaintiff can establish actual damages in order to reject the contention that a denial of actual damages entitles defendant to judgment. Awarding judgment to the defendant would foreclose the plaintiff from possibility of recovering at least nominal damages. Furthermore, with respect to whether actual damages can be awarded to plaintiff, although there is substantial authority denying recovery, e. g. Phillips v. Pantages Theater Co., 1931, 163 Wash. 303, 300 P. 1048; Collatz v. Fox Wisconsin Amusement Corp., 1941, 239 Wis. 156, 300 N.W. 162, there appears to be a liberal trend towards allowing the jury to determine the value of the chance of which plaintiff was deprived. See McCormick on Damages, 122 (1935); Note, 46 Harv.L.Rev. 696 (1933); Note, 28 Col.L.Rev. 76 (1926). This is the English rule, Chaplin v. Hicks, 2 K.B. 786, 791, 793 (1911), and has been followed a few times in America. Kansas City M. & O. R. Co. v. Bell, Tex.Civ.App.1917, 197 S.W. 322; Wachtel v. National Alfalfa Journal Co., 1920, 190 Iowa 1293, 176 N.W. 801. The rationale behind these cases is that plaintiff's chances of success would have had some market value especially since there was no risk of out-of-pocket loss offsetting the possibility of gain. The question of speculative damages in contest cases does not seem to have been definitely decided in New York.[4]

Motion denied. So ordered.

Puzzle-Quiz Contest, the process is one of merely verifying whether or not your solution or answer was right or wrong.

"There is no middle ground.

"Each puzzle in this contest has only one correct solution.

"Each quiz-question and each part of a quiz-question has only one correct answer.

"Accordingly, the 'judging' is merely a matter of tallying whether your solution or answer is right or wrong.

"Checking the correctness of your solution and answers is a matter of meticulous care and accuracy, not for 'judges' in that sense of the word, but for accurate, painstaking examiners who must carefully go over every mark you made, and every solution you wrote on all 36 of your Puzzle-Quizzes.

"But no 'whim' or 'mood' of any judge can in any way influence your point score. Right's right, and wrong's wrong. That's all there is to it." (Exhibit "4", Plaintiff's affidavit).

4. The only authority is one old federal case decided under the more strict theory and under the influence of Swift v. Tyson, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865: Audsley v. Mayor of New York City, 2 Cir., 1896, 74 F. 274, and a recent dictum to this effect in Baez v. Disabled American Veterans, D.C.S.D.N.Y.1954, 119 F. Supp. 490 (Goddard, J.).