Decision and Journal Entry.
{¶ 1} Appellants, parents of soap box derby participants, as next friends of their minor children and in their individual capacity,[1]
appeal from a judgment of the Summit County Court of Common Pleas that granted summary judgment to appellee, International Soap Box Derby, Inc. ("ISBD") on their claims for breach of contract, negligence, defamation, and violations of the Consumer Sales Practices Act. We affirm in part and reverse in part.
 {¶ 2} Appellants include four minors ("the plaintiff racers") who qualified to participate in the 2002 World Championship finals of the All-American Soap Box Derby (the "Derby") in Akron and their fathers. Pursuant to Derby rules, the plaintiff racers shipped their cars, known as Scottie Specials, to Akron for inspection prior to the race. Derby inspectors, using a template to measure the floorboards of the Scottie Specials, determined that the floorboards of several race participants, including the plaintiff racers, had been altered and did not comply with the minimum measurements set forth in the Derby rules. The plaintiff racers were not allowed to compete in the Derby unless they removed all or a portion of the airfoils from the floorboards. Each of them did so but, according to the Appellants and others, removal of the airfoils placed them at a competitive disadvantage because the airfoil decreases wind resistance. None of the plaintiff racers performed well in their respective Derby races.
 {¶ 3} Each of the cars of the plaintiff racers had failed the template inspection due to a similar problem: the floorboards were too short for the template to fit inside each car.[2] All Scottie Special cars are made from kits purchased from ISBD, pursuant to Derby rules. The floorboards are sold precut to a specific size and shape and the rules provide that, during assembly of the car, only minor, specific changes can be made to the floorboards. The cars of the plaintiff racers were made from kits manufactured by ISBD in either 1998 or 1999.[3] During 1998 and 1999, ISBD hand cut the floorboards and the evidence indicates that there were variations in the size and shape of the floorboards that were sold. Different witnesses testified that they purchased several different Scottie floorboards that were made during 1998 or 1999 and the floorboards were not uniform in width or length. One witness testified that he purchased approximately ten floorboards and no two were the same size. At the end of 1999 and beginning of 2000, ISBD began machine cutting the floorboards, which apparently led to a more uniform size and shape of the floorboards that were sold to consumers.
 {¶ 4} According to Appellants, they had complied with all of Derby rules and assembly instructions, including that they did not alter the floorboards that they purchased from ISBD, and their floorboards complied with the minimum length and width measurements set forth in the assembly instructions. Appellants contended that the reason that their cars did not pass inspection was due to one or more of the following reasons: (1) the floorboards that they purchased did not meet ISBD's own size and shape specifications and/or (2) use of a template to inspect the floorboards did not comply with Derby rules pertaining to minimum width and length measurements.
 {¶ 5} Appellants filed a complaint against ISBD, alleging, among other things, that they had purchased their Scottie Special kits from ISBD, that they had not altered the floorboards, that they had fully complied with Derby rules, yet they were denied the opportunity to race the cars that they built because the inspectors incorrectly concluded that they had altered the floorboards of their cars. They set forth the following causes of action: breach of contract, negligence, defamation, and violations of the Consumer Sales Practices Act. Appellants also set forth a claim for injunctive relief, which was later dismissed by the trial court and is not at issue on appeal.
 {¶ 6} ISBD moved for summary judgment, asserting that Appellants could not establish any of their claims. As supporting evidence, ISBD filed a transcript of the hearing on Appellants' request for a temporary restraining order prior to the race as well as depositions of each of the Appellants with exhibits attached to several of the depositions. Appellants responded in opposition to summary judgment, asserting, among other things, that ISBD had failed to demonstrate the absence of any genuine issues of material fact. The trial court granted summary judgment to ISBD on all claims. Appellants appeal and raise two assignments of error.
 First Assignment of Error "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE." {¶ 7} Appellants contend that the trial court erred in granting summary judgment because, among other reasons, ISBD failed to meet their initial burden to demonstrate the absence of a genuine issue of material fact. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." Stateex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589.
 {¶ 8} Doubts must be resolved in favor of the nonmoving party. Hortonv. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686.
 {¶ 9} A party moving for summary judgment bears an initial burden of pointing to "some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Dresher v. Burt (1996),75 Ohio St.3d 280, 293. (Emphasis sic.) After the moving party has met this initial burden, the nonmoving party "may not rest on the mere allegations of her pleading, but her response * * * must set forth specific facts showing the existence of a genuine triable issue." State ex rel.Burnes v. Athens Cty. Clerk of Courts (1998), 83 Ohio St.3d 523, 524.
 {¶ 10} With these standards in mind, we will examine each of Appellants' claims separately.
 Breach of Contract {¶ 11} ISBD asserted that Appellants could not establish a claim for breach of contract because (1) it could not establish that ISBD breached the terms of the contract and (2) Appellants could not establish any damages.
 {¶ 12} Appellants' breach of contract theory was that the ISBD rules and assembly instructions required that they purchase their kit, including the floorboard, from ISBD and that the floorboard "width dimension must be a min. 17" wide, measured 1-1/4;" off the floorboard and directly behind the body seam, and length approx. 83 1/2;" inside the car. "Appellants maintained that they complied with all rules pertaining to the floorboard and that ISBD breached its agreement with them by refusing to allow them to compete in the cars that they built unless they cut or removed the airfoils from their cars. They asserted that the rules provided the only relevant floorboard requirements, which required taking a direct measurement directly behind the body seam, 1 1/4;" off the floorboard, and that ISBD's new practice of placing a three-dimensional template inside the car did not measure the floorboard in this manner. Consequently, according to Appellants, the template inspection was in contravention of explicit Derby rules.
 {¶ 13} ISBD did not dispute that there was an agreement between it and the race participants, which apparently included the Derby rules and assembly instructions and the registration form that each of the Appellants signed. ISBD also did not dispute that the agreement did not explicitly provide for floorboard inspection through the use of a template or at measurement points other than those specified in the agreement. Instead, it pointed to specific provisions of the agreement, attempting to demonstrate that the race inspectors had not breached the agreement. First, ISBD pointed to a portion of Rule C-7.01(a) of the Derby rules, which provided, in relevant part:
"The All-American Soap Box Derby rules are intended to provide fair and uniform regulations governing competition. These rules create competitive opportunities for all Divisions. It is not possible to write individual rules governing every possible circumstance; therefore, the "Spirit of the Rules" shall grant the authority and responsibility for interpretation of the written rules to a special committee named for the purpose, to fairly supervise and judge all competition. It shall be the responsibility of a special committee named for that purpose, to interpret the rules in the interest of fair competition and the special committee's interpretation of the rules shall be binding on the individual and competition under their jurisdiction."
 {¶ 14} ISBD pointed to testimony of an appellant who admitted that he was aware of this rule. ISBD further pointed to the following provision of the registration form, as well as evidence that each of the appellants signed the form:
"As a precedent to participation, * * * [the] car * * * shall have undergone and passed inspection * * * by representatives chosen in the sole and absolute discretion of [ISBD] * * * It being understood and agreed that the decisions of representatives conduct[ing] the inspection shall be final."
 {¶ 15} Appellants responded in opposition to summary judgment on this issue, asserting, among other things, that ISBD failed to meet its burden under Dresher to point to evidence that Appellants could not establish a breach of contract. We agree.
 {¶ 16} "Unless and until the movant has properly supplied the court with evidentiary materials and a valid legal argument to meet the test of the rule, the nonmoving party has no burden to oppose the motion." Klinev. Davis (Dec. 11, 2001), 4th Dist. Nos. 00CA32, 00CA39, and 01CA13, citing Fink, Greenbaum Wilson, Guide to the Ohio Rules of Civil Procedure (2000 ed.), 936, Section 56-14. ISBD failed to cite any legal authority for its argument that the provisions quoted above allowed the inspectors to act outside the terms of the contract or that these provisions precluded a breach of contract action by Appellants. If ISBD's legal argument had been obvious and based on well-settled Ohio law, perhaps an absence of legal authority would not be fatal, but that was not the case here. We found no clear Ohio law on this issue and, in fact, it has been held in another jurisdiction that even the decisions of independent inspectors or contest judges are not binding or final, despite an agreement that they will be, where the inspector or judge failed to comply with specific standards or terms set forth in the parties' agreement. See, e.g., Cities Service Co., Inc. v. Derby Co., Inc. (S.D.N.Y. 1987), 654 F. Supp. 492, 501; Mange v. UnicornPress, Inc. (S.D.N.Y. 1955), 129 F. Supp. 727, 728-729. Because ISBD failed to meet its initial burden to demonstrate the absence of a material issue of fact, summary judgment was not proper on this basis.
 {¶ 17} ISBD also asserted that Appellants could not establish any damages that resulted from the alleged breach. ISBD failed to satisfy its initial burden on summary judgment on this issue as well. In support of this argument, ISBD pointed to some of the evidence of Appellants' alleged damages, and disputed whether those damages were caused by the alleged breach. ISBD failed to point to any additional evidence, however, nor did it make any legal argument, to support its position that there was no causal connection between the alleged breach of contract and the damages alleged by Appellants. Consequently, the trial court erred in granting summary judgment to ISBD on Appellants' breach of contract claims.
 Negligence {¶ 18} ISBD challenged Appellants' negligence claim, contending, among other things, that each of the Appellants signed a written waiver, releasing ISBD from:
"any and all claims, rights, causes of action, demands or otherwise, whether for personal injuries, property damage, or any other loss, damages or expenses which I as the parent/guardian, and/or son/daughter or ward may have against * * * [ISBD] * * * arising from or in any manner related to my son's, daughter's, or ward's participation in * * * the All-American Soap Box Derby and/or any activities incidental or related thereto."
 {¶ 19} The waiver forms were attached as exhibits to the deposition of each of the race participant's fathers. Each witness had identified the form and agreed that he had signed it. Thus, according to ISBD, Appellants had expressly waived any cause of action in negligence.
 {¶ 20} In their brief in opposition to summary judgment, and again on appeal, Appellants fail to point to any evidence, nor did they make any argument supported by legal authority, to contradict ISBD's evidence that Appellants waived any claim of negligence. Consequently, Appellants failed to demonstrate that there is a genuine issue of material fact and the trial court properly granted summary judgment to ISBD on the negligence claims.
 Defamation {¶ 21} A cause of action for defamation requires proof of five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff." (Emphasis sic.) Gosden v. Louis, (1996), 116 Ohio App.3d 195, 206. ISBD asserted on summary judgment, among other things, that Appellants could not establish the final prong of the defamation test, either that the statements were defamatory per se or that they suffered special harm as a result. ISBD pointed to evidence in the record to support this position and satisfied its burden under Dresher.
 {¶ 22} The burden then shifted to Appellants to point to facts to demonstrate that there was a genuine issue of material fact as to whether the statements constituted negligence per se and/or that they suffered special harm as a result. Appellants pointed to no such evidence and did not even address this issue in their brief in opposition to ISBD's motion for summary judgment. Consequently, they failed to meet their burden on summary judgment and the trial court properly granted summary judgment on the defamation claim.
 Consumer Sales Practices Act {¶ 23} Appellants' claims for violations of the Consumer Sales Practices Act were based on R.C. 1345.02(A) and (B), which provide, in pertinent part:
"(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
"(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
"(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; [or]
"(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not[.]"
 {¶ 24} In its motion for summary judgment, ISBD asserted that it did not violate the Consumer Sales Practices Act because it "made no such representations to [Appellants]." It failed to point to any evidence in the record to support that assertion, however. "It is basic that regardless of who may have the burden of proof at trial, the burden is on the party moving for summary judgment to establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Horizon Savings v. Wootton (1991),73 Ohio App.3d 501, 504; see, also, Rodger v. McDonald's Restaurants ofOhio, Inc. (1982), 8 Ohio App.3d 256, 258. Because ISBD failed to meet its burden under Civ.R. 56 as the party moving for summary judgment on this issue, the trial court erred in granting summary judgment on Appellants' claims under the Consumer Sales Practices Act.
 {¶ 25} The first assignment of error is overruled as to Appellants' claims for negligence and defamation. The assignment of error is sustained insofar as it challenges summary judgment on Appellants' claims for breach of contract and violations of the Consumer Sales Practices Act.
Second Assignment of Error
 "THE TRIAL COURT ERRED IN [DENYING] APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT." {¶ 26} Initially, this court must determine whether it has jurisdiction to review this part of the trial court's order. Section3(B)(2), Article IV of the Ohio Constitution limits this court's appellate jurisdiction to the review of final judgments of lower courts. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). ChefItaliano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 88.
 {¶ 27} R.C. 2505.02(B)(1) provides that an order "that affects a substantial right in an action that in effect determines the action and prevents a judgment" is final and appealable. The portions of the trial court's order that granted summary judgment to ISBD "determine[d] the action" as it precluded any recovery against the defendant by Appellants and was thus a final order pursuant to R.C. 2505.02. The denial of a motion for summary judgment, however, does not determine the action and prevent a judgment, and thus generally does not constitute a final order under R.C. 2505.02. Nayman v. Kilbane (1982), 1 Ohio St.3d 269, 271;Balson v. Dodds (1980), 62 Ohio St.2d 287, 289. Unless some exception to the general rule applies, such as an order made in a special proceeding, see R.C. 2505.02(B)(2), the order is not final. See Celebrezze v.Netzley (1990), 51 Ohio St.3d 89, 90. No such exception applies here. Therefore, the aspect of the trial court's order that denied Appellants' motion for partial summary judgment was not final or appealable. Consequently, we lack jurisdiction to review this portion of the trial court's order and the assignment of error will not be addressed.
Judgment affirmed in part and reversed in part, and cause remanded.
WHITMORE, J., BATCHELDER, J., CONCUR
[1] Appellants are Charles Tucker, individually and as next friend of Rachelle Tucker; Roger Reynolds, individually and as next friend of Alex Reynolds; Hal Fountain, individually and as next friend of Lauren Fountain; and Brian Christian, individually and as next friend of Ashley Christian.
[2] There was evidence that seven other cars failed the template inspection for similar reasons.
[3] There was also evidence that some, if not all, of the other cars that failed the template inspection were made from kits manufactured in 1998 or 1999.